RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
*EMERITUS*

DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN

July 31, 2019

*Via ECF*

Honorable Andrew T. Baxter
United States Magistrate Judge
Federal Building and United States Courthouse
Syracuse, NY 13261-7396

   Re: *Raymond v. Mitchell, et al.*, No. 18 Civ. 1467 (N.D.N.Y.)

Dear Judge Baxter:

   We represent Plaintiff Matthew Raymond in the above-captioned matter. Several disagreements regarding document discovery have arisen between the parties, which we outlined in a June 27, 2019 letter to Defendants' counsel. We further proposed a Protective Order that would resolve the vast majority of Defendants' concerns. However, the parties were unable to resolve the outstanding discovery disputes with Defendants' counsel during a July 8, 2019 telephonic meet and confer. Defendants were also unwilling to enter into a Protective Order at this stage.

   As this Court requested during the July 9, 2019 status conference, below is a summary of the current discovery disputes.

**I.**   **Plaintiff Is Entitled to Records Concerning Defendant Troy Mitchell's Conduct During His DOCCS Employment**

   Plaintiff requested that Defendants produce records concerning Defendant Troy Mitchell's DOCCS employment and past conduct, including: Defendant Mitchell's personnel file; documents concerning his history of use of force incidents; documents concerning allegations of misconduct, bullying, and sexual harassment; documents pertaining to his suspension without pay; documents reflecting the filing and/or disposition of any disciplinary charges against him; records of any criminal convictions; and any medical records concerning injuries sustained by Defendant Mitchell as a result of the incident on September 14, 2016. Pl.'s Reqs. for Prod. Nos. 9, 11, 14-15, 20-22.

Defendants claim that Plaintiff's requests are irrelevant and not reasonably calculated to lead to the discovery of relevant information that is proportional to the needs of the case, that allegations of civil rights violations are neither relevant nor admissible, and that documents concerning Defendant Mitchell—disciplinary charges lodged against him, any criminal convictions, his suspension from DOCCS, and his personnel file—are privileged under New York Civil Rights Law § 50-a. Defendants also refused to produce medical records on the ground that they are privileged under HIPAA.

During the July 8 meet and confer, Defendants' counsel stated that, without a court order, Defendants will not produce *any* documents related to Defendant Mitchell's DOCCS employment other than the documents related to this particular incident. Counsel offered no justification for this untenable position.

As the Court may recall, Defendant Mitchell is an extraordinary defendant. A veteran DOCCS employee of long tenure, Mitchell has been sued on multiple occasions by prisoners who allege that Mitchell beat and abused them—in circumstances eerily similar to those Plaintiff alleges. DOCCS paid large quantities of taxpayer money to resolve those claims, which were known to DOCCS long before Plaintiff filed his Complaint. DOCCS is also well aware that a large six-figure verdict was entered against it after Defendant Mitchell was sued for workplace bullying and sexual harassment. Finally, it has emerged that Mitchell was ultimately suspended without pay and is the subject of an ongoing investigation. In other words, if ever DOCCS were on notice that an employee posed an unreasonable and substantial risk of harm to inmates and prison staff, Defendant Mitchell is that employee. Plaintiff must be permitted to explore what information was known about him and when. This evidence will bear out Plaintiff's claims against Mitchell as well as against Mitchell's supervisors, who employed Mitchell for years despite his clear unfitness to serve as a corrections officer.

Defendants' refusal to produce these documents is not acceptable. It is axiomatic that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Civilian complaints made against the defendants and incidents of excessive force by individual defendants are clearly discoverable in § 1983 actions." *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997). Plaintiff is entitled to (i) all use of force files for incidents in which Defendant Mitchell participated, and (ii) any internal DOCCS documents relating to allegations—both substantiated and unsubstantiated—that Defendant Mitchell engaged in excessive force. *See Gross v. Lunduski*, 304 F.R.D. 136, 144-45 (W.D.N.Y. 2014); *Sileo v. Schuck,* 2010 WL 811321, at *3 (W.D.N.Y. Feb. 26, 2010) (requiring production of "prior complaints of excessive use of force by individual defendants" as relevant to plaintiff's excessive force claim); *Unger v. Cohen,* 125 F.R.D. 67, 70 (S.D.N.Y. 1989) ("[C]omplaints that were abandoned or conciliated may not be admissible at trial, *but that does not make them undiscoverable.*") (emphasis added). Defendants assert that they do not maintain use of force documents in a format searchable by officer or employee. Maybe so. But DOCCS's document storage practices do not absolve Defendants of their obligation to produce core material about a Defendant with a long history of abuse and excessive force against inmates. Defendant must conduct whatever searches are necessary to locate responsive documents.

This is particularly so given that at least four other individuals have filed claims against Mitchell for excessive force after strikingly analogous incidents. It is not just possible but likely that Mitchell victimized many inmates in similar ways. Depending on the particular facts, evidence relating to these incidents may ultimately be admissible—and is certainly discoverable—for the purpose of showing that Mitchell has abused inmates over and over pursuant to a "pattern of relevant conduct" under Fed. R. Evid. 404(b). *Stephen v. Hanley*, No. 03 Civ. 6226, 2009 WL 1471180, at *14 (E.D.N.Y. May 21, 2009) (CCRB documents were admissible "pattern evidence" because they included "allegations of excessive force involving the officer's use of a foot to the back or neck to push the complainant to the floor"); *Berkovich v. Hicks*, 922 F.3d 1018, 1022-23 (2d Cir. 1991) (pattern evidence admissible where the prior acts in question "share unusual characteristics with the act charged or represent a unique scheme") (quotation marks and citation omitted).

Defendant's other objection fails, too. Civil Rights Law § 50-a neither governs discovery under the Federal Rules of Civil Procedure nor provides an independent basis for Defendants to withhold relevant evidence. *See Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 530-31 (E.D.N.Y. 2011). It is not "a sword to strike down any and all discovery requests." *Id.* at 531. The State of New York has previously disclosed personnel records in supervisory liability cases involving DOCCS. *See Gross*, 304 F.R.D. at 140; *Evans v. Murphy*, No. 12 Civ. 365, 2013 WL 2250709, at *4 (W.D.N.Y. May 22, 2013).

In short, documents relating to Defendant Mitchell are not just relevant to the case—they are essential. All records relating to Defendant Mitchell's conduct during his DOCCS employment go to the heart of why DOCCS permitted Defendant Mitchell—a known predator—to harm inmates for years until he permanently injured Plaintiff on September 14, 2016. Records of discipline, misconduct, or use of force confirm Defendant Graham's ongoing failure to respond to Defendant Mitchell's violent acts, which he repeatedly committed prior to the September 14, 2016 assault. Plaintiff is likewise entitled to Defendant Mitchell's personnel file, records of any criminal convictions, medical records relating to any injuries claimed from this use of force or others, and documents pertaining to his suspension. This is basic discovery. Defendants must provide it.

II.     **Plaintiff Is Entitled to Records Concerning Other Defendants' Conduct During Their DOCCS Employment**

Plaintiff requested that Defendants produce records concerning all other Defendants' DOCCS employment, including: Defendants' personnel files; documents concerning any Officer Defendant's use of force; documents reflecting the filing and/or disposition of any disciplinary charges against any Officer Defendant; records of any Defendant's criminal convictions; and any medical records concerning injuries sustained by any Officer Defendant as a result of September 14, 2016 Incident. Pl.'s Reqs. for Produc. Nos. 9, 11, 14-15, 20-22.

Defendants objected to Plaintiff's requests on the same grounds to which they objected to producing Defendant Mitchell's documents.

In response, Plaintiff offered to narrow the requests for Defendants' personnel files and concerning their use of force histories to a shorter time span, from September 14, 2009 to date. Plaintiff also similarly narrowed the request for documents reflecting the filing and/or disposition of any disciplinary charges against any Officer Defendant from the date of their appointment to the present. During the meet and confer, Defendants' counsel refused to produce documents responsive even to the narrowed requests, and stated her intent to withhold documents related to other Defendants' conduct during their DOCCS employment or to their DOCCS employment more generally. Defendants' counsel stated that DOCCS possesses no records of employees' criminal convictions.

Such documents are plainly discoverable and highly relevant to the case as set forth *supra* in Section I. Plaintiff brings claims against not only Defendant Mitchell, but also six other named Defendants as well as one John Doe Defendant. All records relating to Defendants' conduct during their course of employment at DOCCS, as well as records relating to their employment at DOCCS more generally, must be produced.

### III. Plaintiff Is Entitled to Records Concerning Himself, Including All Records Regarding Charges Filed Against Him

Plaintiff requested that Defendants produce records concerning himself, including: Plaintiff's legal file and rap sheet, records of his infractions and discipline, records pertaining to arrests for offenses allegedly committed while in custody, records concerning the charges of misbehavior filed against him following September 14, 2016, and documents regarding the September 23, 2016 hearing into said charges of misbehavior. Pl.'s Reqs. for Prod. Nos. 2, 25-26.

Defendants objected to Plaintiff's requests on the grounds of irrelevance and disproportionality, and claimed that Plaintiff is not "entitled" to obtain a copy of his legal file and rap sheet except upon request.

Plaintiff offered to narrow the requests to encompass only those documents maintained by DOCCS concerning Plaintiff while Plaintiff was at Auburn Correctional Facility, but Defendant maintained it would not produce the requested documents, offering no specific rationale for its blanket withholding.

It is Defendants' duty to produce such relevant, discoverable information. Records of Plaintiff's infractions and discipline, records pertaining to arrests for offenses he has allegedly committed while in custody, and records regarding the September 23, 2016 hearing on meritless charges levied against Plaintiff are essential to showing that Defendants have retaliated against and threatened Plaintiff, falsified charges against him, and conducted hearings into his alleged misconduct. There is no legal rationale for withholding these documents.

IV. **<u>Plaintiff Is Entitled to Records Concerning OSI, OIG, and Department of Justice Investigations of Auburn or of the Incident</u>**

Plaintiff requested that Defendants produce records concerning the New York State Office of Special Investigation ("OSI"), the N.Y.S. Office of the Inspector General ("OIG"), and U.S. Department of Justice ("DOJ") investigations of the use of force at Auburn Correctional Facility generally, and, specifically, of the use of force incident on September 14, 2016, including: documents created, prepared or maintained by OSI or OIG in the course of any such investigation; complaints and requests for investigation of allegations of unnecessary, improper, or excessive force use by any Officer Defendant referred to OSI or OIG; complaints and requests for investigation of allegations of misconduct, bullying, and sexual harassment by Defendant Mitchell referred to OSI or OIG; and documents concerning the DOJ's investigation into Auburn over allegations of excessive force. Pl.'s Reqs. for Produc. Nos. 3, 17.

Defendants objected to Plaintiff's requests by claiming—in boilerplate fashion—that the requests are not reasonably calculated to lead to the discovery of relevant information that is proportional to the needs of the case, that OSI and OIG files not pertaining to the September 14, 2016 assault are irrelevant, and that any documents concerning a DOJ investigation are not in Defendants' or DOCCS' custody or control. During the July 8 meet and confer, Defendants' counsel refused to release documents from the ongoing OSI investigation into the September 14, 2016 incident, again offering no specific justification other than the fact that the OSI investigation remained ongoing.

Although Defendants here failed to do so, Defendants in analogous circumstances have invoked the law enforcement privilege. But that principle would not preclude disclosure here even had Defendants raised it. "To show that the privilege applies, the party asserting the privilege must demonstrate that the documents contain information that the law enforcement privilege is intended to protect. Specifically, the party . . . must show that the documents in question contain (1) information pertaining to law enforcement techniques and procedures, (2) information that would undermine the confidentiality of sources, (3) information that would endanger witness and law enforcement personnel, (4) information that would undermine the privacy of individuals involved in an investigation, or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations." *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010). A defendant must make a "clear and specific evidentiary showing of the nature and extent of the [alleged] harm" and "may not rely simply on generalized reiterations of the policies underlying the privilege." *Schiller v. City of New York*, No. 04 Civ. 7922, 2007 WL 136149, at *7 (S.D.N.Y. Jan. 19, 2007). In short, the privilege does not apply simply because a defendant declares an investigation "ongoing." *Kitevski v. City of New York*, No. 14 Civ. 7402, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2007).

Defendants did not assert this privilege, and provided no information whatsoever that would support it—let alone affidavits from high-level DOCCS officials explaining how disclosure would jeopardize current or future investigations, as courts typically require. Given that the requested records contain information about the September 14, 2016 assault that is the precise subject of this investigation, about the Defendants' past use of unnecessary, improper, or

excessive force, and about Auburn's culture of excessive force, they bear directly on Defendants' liability for the misconduct alleged in this complaint and Defendant Graham's failure to respond to or discipline his employees. In reality, the investigative files are likely to contain much factual information that can be disclosed without issue, including witness statements and other completed fact-gathering by investigators. An index would quickly identify these categories of information. The fact that an investigation remains pending three years after the incident also suggests unreasonable delay in the conduct of that investigation, and counsels against shielding the entire investigative file from disclosure. The records must be produced. In the event that these documents are not in Defendants' possession, custody, or control, Plaintiff respectfully requests that the Court so-order a subpoena to obtain these documents directly from OSI and/or OIG.

### V. Plaintiff Is Entitled to Records Concerning the Presence of Cameras in the Location of the Incident

Plaintiff requested that Defendants produce records concerning the presence of cameras in Auburn, including the location of stationary cameras in the medical unit, infirmary, corridors, and segregated housing unit. Plaintiff further requested documents concerning those areas of Auburn that are not covered by security cameras. Pl.'s Reqs. for Prod. Nos. 7, 19.

While Defendants' counsel stated during the meet and confer that she would look into the existence and location of cameras in the medical unit's emergency treatment room—where Plaintiff was assaulted—Defendants objected to the remainder of Plaintiff's requests, claiming irrelevance, disproportionality, and an alleged security risk.

Defendants again attempt to shield relevant and discoverable information behind objections too vague and spectral to defeat Plaintiff's requests. Plaintiff must know which stationary cameras in operation on September 14, 2016 may have captured the moments leading up to the assault or the assault itself. Similarly, Plaintiff must know which areas are *not* subject to the reach of cameras: Defendants may have chosen to assault Plaintiff in the clinic precisely because it is not under video surveillance. Nor do Defendants' security concerns outweigh their responsibility to produce responsive documents. Where a plaintiff is represented by counsel, counsel can be relied upon to "safeguard prison security and the personal safety and privacy interests of the Corrections Officers and their families." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 129 (N.D.N.Y. 1984). In any case, the proposed Protective Order will resolve Defendants' security concerns.

Respectfully submitted,

/s/
Emma L. Freeman

Encl.
c.     All Counsel of Record (via ECF)