UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------x
MATTHEW RAYMOND,

                              Plaintiff,

vs.                                9:18-CV-1467

TROY MITCHELL, et al.,

                              Defendants.
--------------------------------------------x

        Transcript of a Telephone Conference held on

December 18, 2019, at the James Hanley Federal

Building, 100 South Clinton Street, Syracuse,

New York, the HONORABLE ANDREW T. BAXTER, United

States Magistrate Judge, Presiding.

            *Jodi L. Hibbard, RPR, CSR, CRR*
         *Official United States Court Reporter*
               *100 South Clinton Street*
             *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

                     A P P E A R A N C E S

                       (By Telephone)

For Plaintiff:          EMERY CELLI BRINCKERHOFF & ABADY, LLP
                        Attorneys at Law
                        600 Fifth Ave., 10th Floor
                        New York, New York  10020
                          BY:  EMMA LERNER FREEMAN, ESQ.


For Defendants:         LIPSITZ GREEN SCIME CAMBRIA, LLP
(Auburn CF dfts.)       Attorneys at Law
                        42 Delaware Avenue
                        Suite 120
                        Buffalo, New York  14202
                          BY:  PATRICK MACKEY, ESQ.


For Defendant:          MEYERS BUTH LAW GROUP
(Hoppins)               Attorneys at Law
                        21 Princeton Place
                        Orchard Park, New York  14127
                          BY:  CHERYL MEYERS BUTH, ESQ.


Also Present:           STATE OF NEW YORK
                        Office of Attorney General
                        300 S. State Street
                        Suite 300
                        Syracuse, New York  13202
                          BY:  AIMEE COWAN, ESQ.

 1                    (In Chambers, Counsel present by telephone,

 2           2:32 p.m.)

 3           THE COURT:  Okay, good afternoon, this is Judge

 4    Baxter, this is Raymond versus Mitchell, et al.,

 5    9:18-CV-1467.  We have Ms. Freeman for the plaintiff,

 6    Mr. Mackey for all of the defendants except Hoppins, Ms. Buth

 7    for defendant Hoppins, and Aimee Cowan who is from the AG's

 8    Office and was former counsel for all of the defendants.  I

 9    apologize in advance if I sneeze or cough during this, I'm

10    fighting a cold here.

11           So, I know, I'm sure both attorneys are getting up

12    to speed a little bit, but the first order of business is to

13    address the discovery issues that were raised on behalf of

14    plaintiff back in late July in Docket Number 24, which have

15    been in limbo while Ms. Cowan has tried to coordinate the

16    appointment of replacement counsel for all the defendants

17    based on some conflict of interest that developed.

18           We did get a response from Mr. Covert's office, who

19    I'm assuming is a partner of Mr. Mackey, or an associate of

20    Mr. Mackey?

21           MR. MACKEY:  Yes.

22           THE COURT:  But I will say that, you know, while I

23    understand the response and I guess I agree it's true that

24    the individual defendants don't necessarily have custody or

25    control over some of the information sought, the case law I

1    think is fairly clear that the fact that individual

2    defendants may not have custody or control over certain

3    information that is controlled by DOCCS does not allow the

4    defendants to avoid providing that sort of discovery, and it

5    basically becomes incumbent upon counsel for the individual

6    defendants who are DOCCS employees to coordinate with DOCCS

7    counsel to get the relevant information that is not otherwise

8    objectionable.

9          So basically, that response, I just don't think

10   raises an appropriate objection to the discovery demands and

11   the discovery issues that were raised by the plaintiff.

12         Ms. Cowan and other Assistant Attorney Generals

13   obviously have a leg up in coordinating with DOCCS to get

14   information that would not necessarily be in the custody of

15   the individual defendants by virtue of the fact that she's an

16   Assistant Attorney General and also works for the state and

17   handles these kinds of cases frequently, so I recognize that

18   this is not necessarily something that the new counsel would

19   be used to doing.  But it's something that needs to be done,

20   and I'm sure Ms. Cowan, although she obviously cannot

21   continue to represent the defendants, can give you some

22   guidance as to who to get in touch with at DOCCS and how to

23   get their input in terms of responding to these various

24   discovery issues that are raised in the July 31st, 2019

25   letter of plaintiff's counsel which, again, is Docket

1    Number 24.

2              The other thing I will say, and I, you know, I do

3    this based on 10 years of experience handling prisoner civil

4    rights cases, the magistrate judges in this district often

5    benefit from the experience of the Assistant Attorney

6    Generals who represent individual defendants in civil rights

7    cases in tempering the reflexive reaction of DOCCS counsel in

8    response to certain types of discovery motions which is

9    usually, you know, there's no way we're going to provide

10   this, it's objectionable and we need to resist it vigorously.

11   And you know, while the AAGs vigorously represent the

12   interests of their individual clients, they've come to

13   recognize that there are certain types of discovery issues on

14   which the courts have consistently ruled one way or the other

15   and they don't, you know, do combat on issues that have been

16   long resolved in numerous cases.

17             So, you know, I -- again, while it's difficult for

18   private counsel who don't have the experience of working this

19   as state lawyers, you know, I'm going to, I'm going to ask

20   you to, you know, be realistic and act consistently with case

21   law in addressing these discovery demands as opposed to

22   reflexively taking the DOCCS position that there's no way

23   we're going to produce stuff, even though they've lost on

24   similar issues numerous times.

25             So Ms. Cowan, I don't know if there's anything you

1  want to say in terms of what role, if any, you can play in

2  terms of helping the private lawyers with this transition,

3  given obviously that you can't represent the individual

4  defendants.

5  MS. COWAN:  Yeah, I mean I can definitely put them

6  in touch with Chuck Quackenbush at DOCCS, he's usually who I

7  go through with respect to documents and any questions I have

8  so I can put him in touch with both of them, and I'm always

9  still available just to, you know, talk in general about

10  certain issues, so I can definitely make those connections

11  today.

12  THE COURT:  Okay.

13  MR. MACKEY:  Your Honor?

14  THE COURT:  Yes, identify yourself, please.

15  MR. MACKEY:  This is Patrick Mackey.  I understand

16  what you're saying, your Honor.  I guess, what I do want to

17  add is, there is some case law that basically holds that if,

18  if a plaintiff is looking for documentation from an

19  individual defendant, an individual CO, that because the

20  individual CO doesn't, you know, represent the state or DOCCS

21  in general, that they don't have access or possession to

22  those documents and that they wouldn't be required to produce

23  those documents.

24  Now I understand a plaintiff can always subpoena

25  the state or subpoena DOCCS or subpoena an agency that they

think has relevant documents that they may need for the

lawsuit, but I mean, I have two cases in front of me which

basically say that an individual CO, who essentially doesn't

have possession or control of those documents, is not the

party to be producing those documents.

THE COURT:  Okay.

MR. MACKEY:  One of the cases --

THE COURT:  Okay, go ahead.

MR. MACKEY:  One of the cases is *Evans v. Murphy*,

2013 WL 2250709, and that was a 2013 decision.  The other was

more recent, 2017 decision, *Nelson v. Gleason*, 2017 WL

2984430, and basically --

THE COURT:  2017?  2017?

MR. MACKEY:  Yes.

THE COURT:  And what districts are they out of?

MR. MACKEY:  These are Western District of New York

cases.  I did look for some in the Northern District, I

wasn't able to locate any yet.

THE COURT:  All right.  Well, I will tell you, and

I'm -- you know, I'm not ruling out going down this road if

we have to go down this road, but there are variations from

district to district in terms of the prevailing authority,

and I am quite confident, and you can talk offline with

Ms. Cowan if you want to confirm this with a source that's

perhaps -- doesn't have a dog in the fight, but I think it is

1  fairly clear that in the Northern District of New York, when

2  reasonable discovery that was not otherwise objectionable is

3  requested from individual defendants in 1983 actions, which

4  are the only parties who can be sued and the state can't be

5  sued in those actions, that those plaintiffs, through

6  coordination with DOCCS counsel, are still responsible for

7  producing those documents if they are not otherwise

8  objectionable.  And you know, I know there's some case law

9  that goes the other way from other districts, including the

10  Western District of New York, but that is an issue that I

11  think has long since been settled in this district.

12          MR. MACKEY:  Understood, your Honor, I just wanted

13  to make -- bring those two cases to your attention.  I mean

14  they basically hold for the idea that a plaintiff can't move

15  to compel a party to produce documents that are in the

16  possession of a nonparty.  And again, I understand there's

17  means for doing that through subpoena and, you know, I've

18  handled other types of these types of cases and traditionally

19  that's how it's been handled on the plaintiff's end, they

20  would subpoena the agencies or the state offices that hold

21  these documents, so this is kind of the first time we've ever

22  run into this issue.  But your Honor, I understand where

23  you're coming from, I just wanted to bring those cases to

24  your attention, if you have a chance to take a look at them.

25          THE COURT:  Yeah, and as I say, I'm familiar with

this issue, we don't litigate it much in the Northern

District anymore because, as I say, it's fairly established

practice here.  And you know, there is a distinction between

documents that a plaintiff might seek from the employer of

the individual defendants, which is usually DOCCS, and some

other state agency, and I agree with you if it's another

state agency, that the burden may shift to the plaintiff to

seek those documents by subpoena or otherwise.  But in the

Northern District of New York, we do not allow the individual

defendants to hide behind DOCCS because otherwise we would

rarely get the discovery that is reasonably required to

litigate these cases, you know, whether it be the records of

the disciplinary proceedings or the reports from officers

other than an individual defendant relating to an excessive

force case or the medical records.  None of those are in the

custody of individual employees but they're all typically

critical discovery in a civil rights case.

          So, you know, I understand the authority that's out

there, I'm not being critical that that was your initial

response, and I, you know, I recognize that you're a

practitioner in the Western District of New York and were

probably picked just to reduce the possibility of, you know,

any further conflicts of interest, but you're playing on a

different court and, you know, the rules have been applied

differently.

1          MR. MACKEY:  Understood, your Honor.

2          MS. FREEMAN:  Your Honor, this --

3          MR. MACKEY:  I'm sorry.

4          MS. FREEMAN:  This is Emma Freeman for the

5   plaintiff, your Honor, I didn't mean to cut you off, I just

6   wanted to offer a few thoughts on this issue.

7          THE COURT:  Go ahead.

8          MS. FREEMAN:  So I don't feel the need to weigh

9   into the conversation that's already been had, I certainly do

10  agree that it's incumbent on the defendants at least

11  initially to work with DOCCS counsel.  I think in light of

12  the letter that was submitted on behalf of the individual

13  defendants, that it would be beneficial for all parties to

14  set a date for the defendants, including Ms. Hoppins, to

15  provide us with a formal response to the document requests

16  and interrogatories.  And I've agreed upon an interrogatory

17  response date, Mr. Mackey, with your colleague Ms. Perri

18  Roberts but not, Ms. Buth, I think with you yet for

19  Ms. Hoppins, but it's not clear to us at this point what the

20  defendants' position is with respect to all our requests and

21  even with respect to the specific issues that were raised in

22  the July letter.  So for the sake of having clarity moving

23  forward with discovery in the case with new counsel, I would

24  ask the court to set a date for responsive objections and

25  production.  And I'd also like with defense counsel, off the

1   line, to discuss an ESI protocol since there are a couple of

2   requests we propounded that would require searching social

3   media, text messages, et cetera.

4         THE COURT:  And I, you know, as I recall from

5   revisiting the file, you had also proposed a protective order

6   which is typically critical in getting some of the

7   information that you have requested which you really never

8   got any, you know, buy-in from opposing counsel, again, in

9   part because of the developing conflict.  But the parties

10  need to --

11        MS. FREEMAN:  That's right.

12        THE COURT:  -- they need to agree to -- or try to

13  agree to a protective order as well because that's, you know,

14  there are some valid DOCCS security concerns about OSI files

15  and various other things.  But you know, part of the -- part

16  of the way that's addressed is through a protective order.

17  So --

18        MR. MACKEY:  Your Honor, this is -- I'm sorry.

19        THE COURT:  Go ahead.

20        MR. MACKEY:  Your Honor, this is Patrick Mackey.

21  Well, you picked -- you hit on one of the issues I wanted to

22  definitely discuss, the use of a protective order.  So I

23  believe one might have been circulated before my office was

24  involved in the case, so if it's possible for plaintiff's

25  counsel to circulate that again, we could take a look at it

1   and, you know, obviously have some comments if we feel it

2   necessary, but yeah, definitely would want some type of

3   protective order in place before any documents are produced.

4          Regarding the other issue about a formal response

5   to the document demands, obviously I understand that's the

6   normal procedure, and that would be our intent is to produce

7   the documents with also a formal written response.  I guess

8   what I'm considering, though, is it's difficult for us to put

9   a formal written response in without first having the

10  documents in hand, because obviously we'd want to take a look

11  at what we're producing first before submitting written

12  responses to the demands.  So I guess whatever time period,

13  your Honor, that you're setting for the disclosure of these

14  documents, I just ask that you please consider that it will

15  take some time for us to get these documents from the state,

16  it will take some time for us to review all of them to

17  determine if anything needs to be redacted or anything needs

18  to be placed in a privilege log, and then once we've had

19  access to those documents and reviewed them all, at that

20  point we could put together a formal response which would

21  accompany the actual documents that are produced.

22          THE COURT:  All right.  I get that.  So I'm trying,

23  I'm trying to make up for a lot of lost time here.  So I'm,

24  from time to time, in an effort to narrow the areas of

25  dispute and to forestall objections that are ultimately going

1    to prove to be futile to discovery demands or to encourage

2    more flexibility or narrowing on the part of plaintiffs for

3    things that I think are overbroad, I am going to give you

4    some comments with respect to the issues raised in the

5    July 31st letter.

6            We have a court reporter here and I might suggest

7    you want to order the transcript and be prepared to show it

8    to DOCCS in the not-surprising possibility that they would

9    take a much more restrictive view in terms of what they would

10   produce voluntarily, again, in an effort to try to help focus

11   the parties in their meet-and-confer if there are

12   disagreements and to avoid unnecessary dispositive motion

13   practice.

14           And again, I don't want to suggest for a minute

15   that Aimee Cowan is a pushover in terms of counsel for

16   defendants in civil rights cases, far from it, but she may be

17   able to give you some guidance as to, you know, how similar

18   discovery issues have worked out in other cases and avoid,

19   you know, fighting over stuff that is not going to be very

20   productive.

21           So I'm going to spend a couple minutes and discuss

22   some of the categories of issues that were raised in this

23   letter and hope, again, that it will help narrow disputes.

24           So there are a number of documents requested with

25   respect to a particular defendant, Mitchell, who apparently

1    has been the subject of multiple lawsuits who was suspended

2    and is perhaps subject to an ongoing OSI investigation.  I

3    think some of plaintiff's requests are overly broad or not

4    proportional, given the newer emphasis of the rules, you

5    know, so a blanket request for a personnel file I think is

6    asking for a lot of routine administrative stuff that isn't

7    going to prove to be relevant.  There are apparently issues

8    with respect to defendant Mitchell involving bullying and

9    sexual harassment, as I understand it, of other DOCCS

10   employees, and I'm not sure how relevant that's going to be

11   with respect to the, you know, the allegations in this case

12   which deal more with excessive force and retaliation in

13   connection with disciplinary charges.

14           There's also a request which we frequently see for,

15   you know, basically any complaints against a particular

16   defendant on certain issues, and this is a case in which,

17   this is an issue in which there are cases all over the lot

18   and this is one where the Western District of New York cases

19   may tend to favor the plaintiffs, but we typically recognize

20   that inmate grievances tend to be filed with great frequency,

21   are often found to be frivolous, and are not cross-referenced

22   by particular officers, and so we look at other categories of

23   information that is available that may be more directly

24   probative of the issues that the plaintiffs would like to

25   establish, and less burdensome for DOCCS to find.

1          So in particular, there is a section of DOCCS

2   called the Labor Relations Section, which maintains files by

3   individual employees which includes, among other things,

4   records of any discipline that is imposed as a result of

5   sustained allegations of misconduct, and so we typically

6   require production of documents from the Labor Relations

7   files that include sustained allegations of misconduct that's

8   similar to that alleged in the particular complaint, or that

9   involves false testimony or false claims or false statements

10  implicating inmates.

11         Similarly, OSI investigations are conducted with

12  some frequency but not in connection with every grievance

13  that's filed and is often a good -- the fact that there is an

14  OSI investigation is a good indicator that there's a more

15  serious allegation that might prove more useful and possibly

16  ultimately helpful to plaintiffs.  So I would typically

17  require production of OSI investigations, whether or not they

18  were sustained, again, regarding allegations of misconduct

19  against named defendants which are similar to those in the

20  complaint or other things impacting on credibility like false

21  statements or false testimony.

22         With respect to defendant Mitchell's suspension,

23  the relevance of the materials or the investigations with

24  respect to that might depend on whether it related to

25  misconduct involving inmates or whether it involved other

1    misconduct like sexual harassment of coemployees or something

2    like that.  So that may be one that may be subject to more

3    debate and may need to be briefed.

4         Medical records regarding injuries to defendants in

5    connection with particular incidents referenced in the

6    complaint are usually fair game.  And again, as I've

7    discussed already, protective orders and the fact that the

8    plaintiffs are represented typically is sufficient to address

9    a lot of DOCCS security concerns which, again, DOCCS counsel

10   tends to rely on reflexively because typically most of the

11   plaintiffs are pro se.

12        The other thing I would say is that security

13   concerns from DOCCS or individual privacy concerns about

14   other inmates may warrant redactions of some of these types

15   of information that are produced, including identifying

16   information with respect to other inmates.  And I typically

17   look for, instead of just redacting the names, that there be

18   some unique identifying number or something so that the

19   plaintiff can distinguish, you know, when a reference to a

20   particular inmate is the same inmate in multiple places or

21   whether it's a different inmate.

22        The parties always have to negotiate and try to

23   agree on a reasonable timeframe before and after the

24   incidents in the complaint to look for certain of these

25   records, and as I say, I, you know, while the Western

1    District sometimes requires DOCCS to dig into all the

2    grievances, sustained or not, I have been less likely to do

3    so.

4           It sounds as if Mr. Mitchell may have more of a

5    history than most of the other defendants but the request for

6    similar records for the other named defendants, I think the

7    same general principles would typically, would typically

8    apply.

9           With respect to the OSI investigation of

10   Mr. Mitchell and whether or not it's ongoing, Ms. Cowan and I

11   have addressed this issue in another case, and it's kind of a

12   vexing one, because DOCCS is very reluctant to release

13   preliminary investigative conclusions or work papers when

14   they haven't come to a final resolution.  I have in other

15   cases required production of certain types of underlying

16   documents so if, for example, there's an OSI investigation of

17   particular incidents in the complaint, and they've taken

18   statements from the named defendants, I'll typically require

19   that, even if the investigative conclusions aren't yet ready.

20          In terms of the plaintiff's records from DOCCS at

21   Auburn, there seemed to be some resistance to that with prior

22   counsel.  You know, I don't think it's burdensome or

23   unreasonable for the plaintiff to look for the disciplinary

24   history of the particular plaintiff, there are printouts that

25   are available that provide summaries of the nature of the

charges and things like that which at least can get the
plaintiff's attorney started in terms of, you know, whether
there's relevant aspects of the plaintiff's history that may
become an issue in the litigation. It is typical, you know,
there's typically some debate about whether you get into the
underlying documents for certain things but it typically
helps to start with that printout so that you have a sense
of, you know, what the plaintiff's disciplinary history is.
If there are aspects of a plaintiff's personal records, and
again, we're talking I think just about records from Auburn,
if there are aspects of a particular plaintiff's records that
the defendants plan to rely upon, that certainly needs to be
produced in advance. So if there's, you know, something that
DOCCS is suggesting that defense attorneys are going to want
to use, that needs to be disclosed in discovery.

I am not clear what DOCCS keeps in terms of an
inmate's criminal history or criminal prosecutions during
custody, but you know, at a minimum they would need to
disclose anything that they know of that they would rely upon
at trial.

On the issue of camera locations, you know, I don't
know, have any -- is there any video evidence that's been
disclosed so far, Ms. Freeman?

MS. FREEMAN: No, there hasn't been any, your
Honor.

1          THE COURT:  All right.  So the incidents in this

2     case were in 2016, so the chances that any video still exists

3     are probably slim to none, and it also, there's some variance

4     over time as to where cameras are positioned and monitored

5     and things like that, so you know, information about camera

6     locations beyond the area where the plaintiff was allegedly

7     assaulted gets into a lot of security concerns and I've found

8     similar requests not proportional in the past.  You know, if

9     there's not prompt notification of plaintiff that he wants

10    information preserved in connection with, you know,

11    disciplinary charge or whatever, it's typically recycled in

12    relatively short order and in my experience unlikely to

13    support spoliation claims, so that's an area where, you know,

14    the plaintiff's position may be harder to sustain.

15         So that's, you know, again, off the top of my head

16    guidance, but based on 10 years of doing these, I'm not

17    saying that's how I'm going to rule, I'm not saying you can't

18    brief me and convince me otherwise, but I would really like

19    to encourage both parties to meet and confer on some of these

20    issues with that guidance in mind and try to minimize the

21    areas of dispute that are brought to me.

22         All right.  Any questions or need for clarification

23    so far, Ms. Freeman?

24         MS. FREEMAN:  The only question I have, your Honor,

25    has to do specifically with inmate grievances against

defendant Mitchell specifically, and I understand your

summary of the state of Northern District case law and I also

understood from meet-and-confer with Ms. Cowan the issue

around grievances, I understand not being stored by employee,

but I do want to raise this point, and I'll raise it

separately in a meet-and-confer with new counsel as well,

that because of the uniqueness of Lieutenant Mitchell's

situation as alleged in Mr. Raymond's complaint and based on

the fact that we have a claim for negligent discipline that

is largely based on DOCCS' multi-decade choice to retain

Lieutenant Mitchell despite complaints against him going back

to 2002, I expect we will ask the court to depart from the

ordinary course, specifically as to grievances filed against

Lieutenant Mitchell, because the labor file that you

referenced, your Honor, if it only hinges on discipline that

was actually enacted, obviously it can't help us to

substantiate our case of negligent discipline which we

believe to be well founded in the allegations.

        THE COURT:  Okay, that's fine, and I guess the only

thing I would suggest is take a gander at any OSI reports

involving Mitchell first before you decide whether you need

to delve into all the grievances, because as I say, even,

even if they're not sustained, I think those are typically an

indication of more serious allegations and, you know, so

that -- I get that.

1          And the other thing I meant to say and I might not

2     have, I don't really have a good idea of what the allegations

3     of, for example, bullying by Mitchell of other employees

4     might include, but to the extent it includes, you know,

5     encouraging other employees to hold the line in terms of

6     denying misconduct or something like that, that might prove

7     to be more relevant and fair game.

8          Mr. Mackey, anything you want to say based on my

9     little recitation?

10          MR. MACKEY:  I don't think I have anything else to

11     add.

12          THE COURT:  Ms. Buth?

13          MS. MEYERS BUTH:  No, thank you, Judge.

14          THE COURT:  Ms. Cowan?

15          MS. COWAN:  No, your Honor.  I will just add, you

16     referenced the disciplinary history printout that is

17     available, I did disclose that back in May so plaintiff's

18     counsel should have a list of that at least.

19          THE COURT:  Okay, fair enough.  All right.  So,

20     what I think, what I think I'm going to do is encourage the

21     parties to talk to each other and encourage defense counsel

22     to talk to Ms. Cowan and to talk to Mr. Quackenbush at DOCCS

23     counsel and get a little better idea of the lay of the land,

24     and then maybe in -- by January 17, send me a status report,

25     hopefully with consensus deadlines for, you know, responding

1   to discovery and/or responding to the various discovery

2   issues raised by Ms. Freeman or the schedule going forward

3   or, failing that, asking for a follow-up phone conference

4   because you can't agree on anything, in which case we'll try

5   to sort it out.

6           You know, I understand, Ms. Freeman, your desire to

7   have a deadline for, you know, responses to the various

8   discovery responses and, you know, certainly with respect to

9   the interrogatories addressed to the individual defendants

10  there's no reason why the lawyers shouldn't be getting on

11  that right away, but with respect to document production, for

12  example, they're going to have to get DOCCS on board and I

13  know from my past experience that that can be a challenge

14  even for the veteran AAGs and so for outside counsel it might

15  even be more vexing.  So I would --

16          MS. FREEMAN:  I'm happy to work with defense

17  counsel on that, your Honor.

18          THE COURT:  Okay.  Is there anything else anybody

19  thinks we should discuss this afternoon?

20          MS. COWAN:  Your Honor, I just -- I was just going

21  to say I don't know what the court wants to do with respect

22  to the John Doe defendant that's remaining, I understand I'm

23  still the lead attorney for that defendant.  I know the

24  deadlines have already passed as far as amendment of

25  pleadings but I wasn't sure if the court was going to extend

that deadline or require me to stay on this case for this

John Doe defendant.

THE COURT:  I think you need to get off for sure.

MS. COWAN:  Okay.

THE COURT:  And in fact Nicole wrote that down on

my list of things to talk about and I skipped over it so I'm

glad you raised it.  You know, Ms. Freeman, I think one of

the things you should discuss with opposing counsel and let

me know in the status report is whether there -- you know,

you've exhausted your efforts to identify John Does or

whether the delay in the discovery has impeded those efforts

and you want some additional time to try to do that.

MS. FREEMAN:  Sure, your Honor, I'm happy to give

you an update by the 17th.  I can say now, though, that we

don't have the discovery necessary to identify the Doe

defendant.  I think we have exhausted the materials we have

and it seems likely to me and my colleague on the case that

we may need at least a deposition or two of some of the key

defendants before we're able to make that identification, so

we will and are now seeking an extension of that deadline if

the court's amenable.

THE COURT:  Okay.  Well, that's fair enough, you

know, and you can see if there's any resistance from defense

counsel but that seems reasonable to me, so I think we just

leave John Doe unrepresented for now.  I think sometimes the

AAGs enter appearances on behalf of everybody including John
Does but I think more typically in our civil litigation they
remain unrepresented until we find out who they are.  So
we'll just take you off as counsel and, you know, if
somebody's identified, we'll address whether Mr. Mackey has
any conflicts with respect to them or not.

MS. COWAN:  Thank you, your Honor.

THE COURT:  Okay.  Anything else?

MS. MEYERS BUTH:  Cheryl Meyers Buth, your Honor, I
spoke to Ms. Freeman a couple weeks ago, one of the things
that I do not see reflected anywhere is whether there's been
a settlement demand made by the inmate or any discussions of
settlement.

THE COURT:  So the way this --

MS. FREEMAN:  Sorry, your Honor, go ahead.

THE COURT:  The way this usually works, and
Ms. Cowan can maybe give you some guidance on this, the
settlement process through DOCCS and the state is probably
even more treacherous than the discovery path, and so it is
typical that we wait until we get down the road a little bit
with discovery.  And what typically I think the defense
attorneys look for is a demand from the plaintiffs, you know,
educated by some of the discovery, and then the -- either
DOCCS counsel or the AAG or in this case private counsel
makes a judgment as to whether it's in the ballpark and

1   whether it's worth trying to start that process.  But it's,

2   you know, it's -- I think that's another thing that's kind of

3   tricky for outside counsel to handle and Ms. Cowan can maybe

4   give you some advice as to how to broach that subject and

5   when it's typically most productive to do so.  Okay?

6   Anything further?

7          MS. FREEMAN:  Not from plaintiff, your Honor, and

8   Ms. Buth and Mr. Mackey, I will send you the draft protective

9   order that I had written many months ago and we can have a

10  discussion about it offline.

11         MR. MACKEY:  Thank you.

12         THE COURT:  Thanks everybody, happy holidays.

13             (Proceedings Adjourned, 3:08 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5     Official Realtime Court Reporter, in and for the

 6     United States District Court for the Northern

 7     District of New York, DO HEREBY CERTIFY that

 8     pursuant to Section 753, Title 28, United States

 9     Code, that the foregoing is a true and correct

10     transcript of the stenographically reported

11     proceedings held in the above-entitled matter and

12     that the transcript page format is in conformance

13     with the regulations of the Judicial Conference of

14     the United States.

15

16                    Dated this 6th day of January, 2020.

17

18

19                         /S/ JODI L. HIBBARD
                           _____
20                         JODI L. HIBBARD, RPR, CRR, CSR
                           Official U.S. Court Reporter
21

22

23

24

25
```