# Exhibit A

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

September 29, 2020

**Via FedEx**

Special Agent In Charge
Stephen Belongia
One FBI Plaza
Buffalo, NY 14202

Thomas Spina Jr.
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
Northern District of New York
445 Broadway, Room 218
Albany, New York 12207

Director Christopher A. Wray
Federal Bureau of Investigation Headquarters
Record/Information Dissemination Section
935 Pennsylvania Avenue NW
Washington, DC 20535-0001

Re: *Matthew Raymond v. Troy Mitchell, et al.*, No. 18 Civ. 01467 (GLS)(ATB)

Dear Special Agent Belongia, Chief Spina, and Director Wray:

We represent Plaintiff Matthew Raymond in the above-referenced action, currently pending in the United States District Court for the Northern District of New York. Mr. Raymond brings claims under 42 U.S.C. § 1983 and state law against a number of correctional employees stemming from an assault on Mr. Raymond on September 14, 2016 in Auburn Correctional Facility. The central defendant in this case is former DOCCS Lieutenant Troy Mitchell, who was employed by DOCCS for approximately 30 (thirty) years prior to his retirement in 2018. Defendant Mitchell is alleged to have been the ringleader in the assault on our client,

which caused lasting physical injuries to Mr. Raymond.

We write pursuant to *Touhy v. Ragen*, 340 U.S. 462 (1951) and 28 C.F.R. §§ 16.21-16.26 to request the production of documents from the Federal Bureau of Investigation and/or the United States Attorneys' Office for the Northern District of New York arising from the FBI's joint law enforcement investigation into violence against prisoners at Auburn Correctional Facility, Case ID # 282A-AL-46647. This letter and the subpoena enclosed as Exhibit A, and Amended Complaint, Exhibit B, serve as a formal *Touhy* request.

Specifically, Mr. Raymond seeks: (1) an FBI report dated March 25, 2005 in Case ID # 282A-AL-46647, comprised of approximately 178 pages (a redacted copy of the first page of this report is attached as Exhibit 2 to the Subpoena to this letter) regarding "allegations involving incidents of inmate assaults, conspiracy to commit assault, Official Misconduct and Murder at the Auburn Correctional Facility, City of Auburn, County of Cayuga, New York"; (2) copies of any interviews, transcripts, depositions or statements taken from Defendant Troy Mitchell or referencing Defendant Troy Mitchell; (3) copies of any interviews, transcripts, depositions, or statements with any inmate witnesses identifying Defendant Troy Mitchell; and (4) copies of any communications, inter-departmental memos, incident reports, or statements generated by any officer, agent or employee of NYS DOCCS referencing Defendant Troy Mitchell that were collected for purposes of the investigation.

According to the documents this office received via eFOIPA, in or around 2005, the FBI along with the New York Department of Corrections, Inspector General's Office and the New York State Police conducted a joint investigation into allegations of correction officer violence against correction officers at Auburn Correctional Facility ("ACF"). According to the report, "the Investigation has determined that the homicide of Shane Hotmer and numerous other incidents including rapes, stabbings and beatings of inmates have been a direct result of instructions and/or misconduct by Auburn Correctional Facility Correction Officers. Investigation has identified approximately ten core correctional officers and approximately forty additional correctional officers who have repeatedly engaged in a pattern of conspiratorial misconduct which has resulted in death, injury, oppression, threats and intimidation." Subpoena Ex. 2 at 1.

In Mr. Raymond's case, Mr. Raymond alleges that Defendant Troy Mitchell has a long history of abusing and beating incarcerated people at Auburn Correctional Facility throughout his tenure there. Defendant Mitchell worked at Auburn Correctional Facility for approximately 30 years until his retirement in 2018 following his suspension without pay for his role in the assault of inmate Waddell Smith. Mr. Raymond alleges:

- "The assault on Mr. Raymond is part of a long and documented pattern of incidents during which Defendant Mitchell and his subordinates violently abused inmates. DOCCS should have terminated Defendant Mitchell years earlier, before he could attack yet another person in its custody. Instead, DOCCS tolerated and condoned Defendant Mitchell's grotesque pattern of abuse and torture against inmates, failed to take any steps to curb his brutality, and even promoted him from Sergeant to Lieutenant." Compl. ¶ 3.

- Numerous Other Auburn inmates and employees have sued DOCCS because of the abuse they suffered at the hands of Defendant Mitchell, including but not limited to Dino Caroselli, Richie Thomas, Jason Berry, and Waddell Smith.  Compl. ¶¶ 65-78.

- The Superintendent of Auburn knew that Defendant Mitchell had on multiple occasions committed predatory and violent acts against inmates purportedly in his care, and that the State of New York had already spent nearly one million dollars to compensate victims of Defendant Mitchell's abuse and violence, yet failed to intervene, discipline or terminate Defendant Mitchell.  Compl. ¶¶65-78.

Mr. Raymond seeks documents pursuant to the enclosed subpoena that relate to an investigation into widespread corrections officer violence against prisoners at ACF between 2001 and 2005.  This was a time period during which Defendant Mitchell was employed at ACF. Evidence showing that Defendant Mitchell's abuse of prisoners was investigated by the FBI and law enforcement agencies in 2005, that such investigation was known to DOCCS, and that DOCCS retained Defendant Mitchell notwithstanding these reports of abuse are relevant to Mr. Raymond's claims against the Superintendent for deliberate indifference and negligent retention and supervision.  These documents are also relevant to Mr. Raymond's claims against Defendant Mitchell as they prove that Defendant Mitchell has engaged in a lifelong pattern of abuse inmates during his employment at ACF, as part of a pattern, habit, and modus operandi.

The testimony is therefore "both 'relevant and essential' to the presentation of [Mr. Mitchell's] case on the merits."  *Miller v. Mehltretter*, 478 F. Supp. 2d 415, 424 (W.D.N.Y. 2007) (quoting *In re Search of Premises Known as 1182 Nassau Averille Park Rd.*, 203 F. Supp. 2d 139, 140 (N.D.N.Y. 2002)).  The documents are discoverable under the Federal Rules of Civil Procedure and are not subject to any known privilege.  *See* 28 C.F.R. §§ 16.26(a), (b).

Please contact me should you have any questions about this request.  Please note that fact discovery closes in this case in December 2020.

Thank you for your consideration of this request.  We look forward to hearing from you at your earliest convenience.

Very truly yours,

Katherine Rosenfeld

Enclosure

cc: All counsel of record (*by email*)

# Exhibit A

# UNITED STATES DISTRICT COURT
## for the
### Northern District of New York

| | |
|---|---|
| Matthew Raymond | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 9:18-cv-01467 (GLS) (ATB) |
| Troy Mitchell, et al., | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Director Christopher A. Wray, Federal Bureau of Investigation Headquarters,
Record/Information Dissemination Section, 935 Pennsylvania Avenue NW, Washington, DC 20535-0001

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit 1.

| Place: Emery Celli Brinckerhoff Abady Ward & Maazel LLP<br>600 Fifth Avenue, 10th Floor<br>New York, NY 10020 | Date and Time:<br>10/19/2020 12:00 pm |
|---|---|

❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/29/2020

CLERK OF COURT

_____     OR     _____
_Signature of Clerk or Deputy Clerk_                          _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Plaintiff
Matthew Raymond                                                                                    , who issues or requests this subpoena, are:
Katherine Rosenfeld, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, 600 5th Ave., 10th Fl., New York, NY 10020

krosenfeld@ecbawm.com      **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  9:18-cv-01467 (GLS) (ATB)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                   _____
                                                                    *Server's signature*

                                                      _____
                                                                    *Printed name and title*

                                                      _____
                                                                    *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit 1 to Subpoena

<u>**Exhibit 1 to Subpoena**</u>

## I.    DOCUMENTS TO BE PRODUCED

1.     A complete copy of the report issued by the Federal Bureau of Investigation dated March 25, 2005 in Case ID # 282A-AL-46647, comprised of approximately 178 pages (a redacted copy of the first page of this report is attached as Exhibit 2) regarding the results of the Investigation.

2.     All interviews, transcripts, depositions or statements taken from DOCCS employee Troy Mitchell, or documents summarizing Mr. Mitchell's interviews, statements or testimony, in connection with the Investigation.

3.     All interviews, transcripts, depositions or statements taken from any DOCCS employees in connection with the Investigation referencing Troy Mitchell.

4.     All interviews, transcripts, depositions or statements taken from any DOCCS inmates in connection with the Investigation referencing or identifying Defendant Troy Mitchell.

5.     All communications, inter-departmental memos, incident reports, or documents that were collected or generated for purposes of the Investigation that reference Defendant Troy Mitchell.

## II.    DEFINITIONS

1.     <u>DOCCS</u>: The term "DOCCS" means the New York State Department of Corrections and Community Supervision.

2.     <u>Communication</u>: The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3.     <u>Document</u>: The term "Document" is used in the broadest sense consistent with the Federal Rules of Civil Procedure and includes any communications and any electronically stored

materials and recordings such as emails, instant messages, voice mails, records, reports, ledgers and statements. Drafts or copies that are not identical duplicates of the original of each document, including without limitation those bearing handwritten notations, shall be deemed separate and distinct documents.

4.  <u>The Investigation</u>: The term "The Investigation" refers to a joint investigation conducted by the Federal Bureau of Investigation, Department of Corrections, Inspector General's Office, and the New York State Police into allegations into the homicide of Shane Hotmer and numerous other incidents including rapes, stabbings and beatings of inmates by Auburn Correctional Facility Correction Officers, for the approximate time period of 2001 to 2005. According to the report Summary: "The F.B.I. along with members of the New York State Police and the New York State Department of Corrections Office of the Inspector General has been investigating historical allegations involving incidents of inmate assaults, conspiracy to commit assault, Official Misconduct and Murder at the Auburn Correctional Facility, City of Auburn, County of Cayuga, New York."

5.  <u>Troy Mitchell</u>: The term "Troy Mitchell" refers to the individual defendant Troy Mitchell in the action pending in the United States District Court for the Northern District of New York, *Matthew Raymond v. Troy Mitchell, et al.*, No. 18 Civ. 01467 (GLS)(ATB). Mr. Mitchell was an employee of DOCCS between approximately 1986 and 2018.

# Exhibit 2 to Subpoena

# UNITED STATES DEPARTMENT OF JUSTICE
## Federal Bureau of Investigation

Copy to:     Department of Justice
United States Attorney - AUSA [ ]

Report of:   SA [ ]       Office: Albany
Date:        03/25/2005

Case ID #:   282A-AL-46647

b6
b7C

Title:      Sgt. [ ]
Capt [ ] et al;
Auburn Correctional Facility
Auburn, NY;
Shane Hotmer-Victim; et al;

Character:   CR - COLOR OF LAW

Synopsis:   Numerous victim interviews conducted. Notification of Superintendent John W. Burge on 1/27/05. Obtained some incident reports, interdepartmental communications, Use of Force reports, photographs, medical reports, medical examiner's report. Criminal history conducted on involved persons, records attached. Universal Indices conducted on involved persons, however, due to the volume, analysis has not been completed.

- P -

DETAILS:

      Captioned matter is a joint investigation being conducted by Federal Bureau of Investigation, Department of Corrections, Inspector General's Office and the New York State Police.

      Investigation has determined that the homicide of Shane Hotmer and numerous other incidents including rapes, stabbings and beatings of inmates have been a direct result of instructions and/or misconduct by Auburn Correctional Facility Correction Officers. Investigation has identified approximately ten core correctional officers and approximately forty additional correctional officers who have repeatedly engaged in a pattern of conspiratorial misconduct which has resulted in death, injury, oppression, threats and intimidation.

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

**MATTHEW RAYMOND**,                                    **AMENDED COMPLAINT**

                                    Plaintiff,          **JURY TRIAL DEMANDED**

                -against-                                9:18 Civ. No. 1467 (GLS) (ATB)

**TROY MITCHELL, Lieutenant at Auburn**
**Correctional Facility, CHARLES THOMAS,**
**Correction Officer at Auburn Correctional Facility,**
**THOMAS HARTE, Sergeant at Auburn Correctional**
**Facility, THOMAS PHILLIPS, Correction Officer at**
**Auburn Correctional Facility, THOMAS GIANCOLA,**
**Correction Officer at Auburn Correctional Facility,**
**HAROLD D. GRAHAM, Former Superintendent of Auburn**
**Correctional Facility, BRIAN BAUERSFELD,**
**Correctional Hearing Officer of Auburn Correctional**
**Facility, BRIAN O'HORA, Correction Officer at Auburn**
**Correctional Facility, AIMEE HOPPINS, R.N., Dr.**
**DEBORAH GEER, and "JOHN DOE", Correction**
**Officer at Auburn Correctional Facility,**

                                    Defendants.
-----------------------------------------------------------------X

1.      Plaintiff Matthew Raymond, for his amended complaint, alleges, upon

personal knowledge as to himself and information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

2.      On September 14, 2016, while Plaintiff was in the custody of the New

York State Department of Corrections and Community Supervision ("DOCCS") at the Auburn

Correctional Facility ("Auburn"), Defendant Lieutenant Troy Mitchell waterboarded and

violently assaulted Plaintiff Matthew Raymond with blows to his head, neck, chest, and groin.

On the date of this attack, DOCCS was—and had been—aware for many years that Defendant

Mitchell was a notorious, serial, and violent abuser.  During this beating, Mr. Raymond was

defenseless, shackled, and restrained with his hands in a "black box."  Defendant Mitchell used his open hand, closed fist, and baton to attack Mr. Raymond and inflicted permanent injuries upon him.  Defendant Mitchell's vicious and unjustified attack occurred while Sergeant Thomas Harte, Correction Officers ("CO") Charles Thomas, Thomas Phillips, Thomas Giancola, and "John Doe" (hereinafter "CO Defendants") stood by and did nothing to stop it.

3.     The assault on Mr. Raymond is part of a long and documented pattern of incidents during which Defendant Mitchell and his subordinates violently abused inmates. DOCCS should have terminated Defendant Mitchell years earlier, before he could attack yet another person in its custody.  Instead, DOCCS tolerated and condoned Defendant Mitchell's grotesque pattern of abuse and torture against inmates, failed to take any steps to curb his brutality, and even promoted him from Sergeant to Lieutenant.

4.     After the assault on September 14, 2016, DOCCS medical care practitioners at Auburn ignored and neglected Mr. Raymond's serious, emergent medical condition.  As a result, Mr. Raymond—helpless without critical medical care—suffered months of excruciating pain from the injuries he sustained during the assault.

5.     Plaintiff files this civil rights action against Defendant Mitchell, who assaulted him; the CO Defendants, who abetted Defendant Mitchell's attack and failed to intervene; Nurse Aimee Hoppins and Dr. Deborah Geer (the "Medical Provider Defendants"), who callously and recklessly ignored Mr. Raymond's serious medical condition; and former Superintendent Harold Graham, Correctional Hearing Officer Brian Bauersfeld, and Correction Officer Brian O'Hora, who grossly abdicated their obligations to investigate the assault against Mr. Raymond and failed to protect him from a serially abusive employee.

6.      Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  This action arises under the Eighth Amendment to the Constitution of the United States and 42 U.S.C. §1983.  Venue is proper in this district under 28 U.S.C. § 1391(b).

8.      At all relevant times, Mr. Raymond was confined at Auburn in the care and custody of DOCCS.

## THE PARTIES

9.      Plaintiff **MATTHEW RAYMOND** resides in Chemung County.

10.      Defendant **TROY MITCHELL** was at all relevant times a Lieutenant at Auburn, and as such he was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

11.      Defendant **CHARLES THOMAS** was at all relevant times a Correction Officer at Auburn, and as such he was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

12.      Defendant **THOMAS HARTE** was at all relevant times a Sergeant at Auburn, and as such he was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

13.      Defendant **THOMAS PHILLIPS** was at all relevant times a Correction Officer at Auburn, and as such he was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

14.     Defendant **THOMAS GIANCOLA** was at all relevant times a Correction Officer at Auburn, and as such he was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

15.     Defendant **"JOHN DOE"** was at all relevant times a Correction Officer at Auburn, and as such was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

16.     Defendant **BRIAN BAUERSFELD** was at all relevant times a Correction Hearing Officer at Auburn, and as such was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

17.     Defendant **BRIAN O'HORA** was at all relevant times a Correction Officer at Auburn, and as such was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

18.     Defendant **AIMEE HOPPINS, R.N.** was at all relevant times a nurse at Auburn, and as such she was responsible for the provision of nursing care to prisoners confined there, including Mr. Raymond.

19.     Defendant **DR. DEBORAH GEER** was at all relevant times a doctor at Auburn, and as such she was responsible for the provision of medical care to prisoners confined there, including Mr. Raymond.

20.     Defendant **HAROLD D. GRAHAM** was at all relevant times the Superintendent of Auburn, and as such he was responsible for the safety and security of the inmates confined therein, including Mr. Raymond.

21.     At all relevant times, Defendants were state actors and acted under color of the laws, statutes and ordinances, regulations, policies, customs, and usages of the State of New York.

## FACTUAL ALLEGATIONS

22.     Plaintiff Matthew Raymond is 30 years old and has been incarcerated since May 30, 2015.  Born and raised in Buffalo, he obtained a GED at 17 years old.

23.     Mr. Raymond has two children and maintains a close relationship with his mother and other family members.  Between 2010 and 2015, he was employed as a laborer and project specialist for an environmental/demolition/construction firm based in Buffalo and worked on numerous construction projects at a local college.  He is also an ironworker who builds structural fencing.

24.     Before his incarceration in 2015, while working on a construction site, Mr. Raymond suffered a traumatic brain injury that still causes him to suffer occasional seizures.

## I.     Mr. Raymond is Transported to the Hospital for Treatment of Seizures

25.     On September 13, 2016, Mr. Raymond suffered a seizure at Auburn and was transported by DOCCS to the Auburn Community Hospital ("the Hospital") for evaluation and treatment.  At the Hospital, Mr. Raymond had another seizure.  He was returned to Auburn within hours.

26.     The next day, on September 14, 2016, Mr. Raymond suffered a third seizure at Auburn and was again transported by DOCCS to the Hospital for evaluation and treatment.

27.     During his transport from Auburn to the Hospital on September 14, 2016, Mr. Raymond was shackled at the ankles and handcuffed at the wrists, and his hands were connected by a chain and placed in a "black box."

28.     A black box is a device that is used with handcuffs and a belly chain. The inmate's hands are locked together tightly and secured in a metal box, which is then chained to the inmate's waist.  When combined with leg shackles, which bind the inmate's ankles together, a black box severely restricts the inmate's mobility; with arms and hands fully restrained, the inmate can take only small, shuffling steps.

29.     Throughout his hospitalization on September 14, 2016, Mr. Raymond's hands were in a black box and his ankles in shackles.

30.     On September 14, 2016, while disoriented and confused after his most recent seizure, Mr. Raymond sat up suddenly from his hospital bed.

31.     In response, Defendant Phillips, one of two officers assigned to Mr. Raymond's room, pressed an emergency button to summon the Corrections Emergency Response Team ("CERT").

32.     Despite Mr. Raymond's ongoing medical needs, the CERT decided to transport Mr. Raymond—still shackled and placed in a black box—back to Auburn.

33.     Mr. Raymond suffered another seizure in the transport van back to Auburn and vomited into the well of the vehicle.

## II.     Defendant Mitchell Brutally Assaults Mr. Raymond While Other CO Defendants Assist in the Assault

34.     Back at Auburn, Mr. Raymond was taken to a small room known as the emergency treatment room in the medical unit.  He was still completely immobilized by shackles and the black box.

35.     Defendant Hoppins entered the room along with Mr. Raymond and the escorting officers from the CERT.  Mr. Raymond was placed on a medical examination table. Members of the CERT ordered Defendant Hoppins to step outside.  She exited the room.

36.     After Defendant Hoppins exited, Defendant Mitchell began to violently assault Mr. Raymond.  Approximately five correction officers—including Defendants Thomas, Phillips, Giancola, and Harte—surrounded the table where Mr. Raymond lay restrained in shackles and the black box.

37.     Defendant Mitchell first waterboarded Mr. Raymond, holding Mr. Raymond's head down by his hair, pulling Mr. Raymond's shirt up over his face, and slowly dumping a large bucket of water on Mr. Raymond's nose and mouth.

38.     Waterboarding is a form of torture in which a person is strapped, face up, to a board that slopes downward at the head, while large quantities of water are poured over the face into the breathing passages.  It simulates the experience of drowning.  International experts including the United Nations Special Rapporteur on Torture and the International Committee of the Red Cross recognize waterboarding as a form of torture that violates the Geneva Conventions.

39.     While Defendant Mitchell was pouring water over his face, Mr. Raymond could not see or breathe.  He could not move his hands.  He felt like he was drowning and could not catch his breath; every time he tried to inhale, he felt he was breathing in water.

40.     Defendant Mitchell next punched Mr. Raymond on and around his face, neck, and chest.  Mr. Raymond remained in shackles and the black box while he was hit repeatedly.  Mr. Raymond suffered multiple abrasions, including a deep scratch across his neck and onto his face.

41.     Correction officers, including Defendants Thomas, Phillips, Giancola, and Harte stood by and observed this assault, and did nothing to intervene or stop the assault.

42.     Relentless in his attack, Defendant Mitchell directed an officer to spread Mr. Raymond's legs, which that officer did.  When Mr. Raymond tried to close his knees to protect his groin, other officers held his knees apart.

43.      Defendant Mitchell forcefully grabbed and twisted Mr. Raymond's testicles and penis, causing Mr. Raymond to suffer extreme pain, anguish, and grievous and/or permanent physical injury.  While holding Mr. Raymond's genitals in his hand, Defendant Mitchell called Mr. Raymond a "stupid little bitch."

44.      As Mr. Raymond again attempted to close his thighs, Defendant Mitchell began punching his groin area with a closed fist.  Then, he used his baton to beat Mr. Raymond's groin, again causing Mr. Raymond to suffer extreme pain, anguish, and grievous and/or permanent physical injury.

45.     Throughout the assault, Mr. Raymond was restrained and surrounded by five corrections officers.  He presented no physical threat whatsoever to anyone.

46.     When CO Thomas told Mitchell that Mr. Raymond "just had a seizure," Mitchell said that Mr. Raymond was "faking," and continued his beating.

47.     Mitchell's assault finally ended after one of the bystanding officers said it was "enough."  Mitchell said "take him to the fucking box," then left.

48.     Defendant Mitchell's vicious and violent attack upon Mr. Raymond was malicious, sadistic, and intended to cause Mr. Raymond pain and physical injury.

49.      Defendant Mitchell's vicious and violent attack upon Mr. Raymond served no legitimate correctional purpose.

50.     Throughout the entire assault, COs Doe, Phillips, Giancola, and Thomas surrounded Mr. Raymond while he lay helpless on the examining table.  They aided and abetted Defendant Mitchell by assuring that Mr. Raymond could not move.

51.     One or more of the CO Defendants actively facilitated the attack by forcing open Mr. Raymond's legs and otherwise physically restraining him while he was beaten.

52.     Defendants Thomas, Harte, Phillips, Giancola, and /or "John Doe" failed and refused to protect Mr. Raymond or otherwise intervene on his behalf as Defendant Mitchell carried out the brutal assault.

53.     None of the CO Defendants reported the assault to their superiors.

**III.  CO Defendants Fail to Record the Incident or Destroy the Videotape Evidence**

54.     During the entire assault upon Mr. Raymond, Defendant Harte remained in the corner of the room, holding a videorecorder.

55.     DOCCS policy required Defendant Harte to videotape all actions taken by the CERT, including Defendant Mitchell's assault against Mr. Raymond.

56.     Defendant Harte either did not videotape the assault or destroyed the videotape before it could be reviewed by any investigators.

**IV.  Mr. Raymond Suffers Serious Injuries from the September 14, 2016 Assault**

57.     As a result of the assault, Mr. Raymond suffered and continues to suffer from severe pain, emotional injury, and grievous and/or permanent physical injuries.

58.     As a result of the assault, Mr. Raymond has been required to use a catheter to urinate since January 2017.  Prior to this attack, Mr. Raymond never used a catheter.

59.     As a result of the assault, Mr. Raymond continues to require medical intervention at outside medical institutions.  He suffers from near-constant bladder pain,

pyelonephritis (kidney infections), and urinary tract infections.  He may never again be able to urinate independently.  He may be unable to father biological children.

60.    Since in or around September 2018, Mr. Raymond has had trouble walking.  His right side is stiff.  He is forced to limp.

61.    These symptoms and injuries are the result of damage Defendants caused to Mr. Raymond's spinal cord during the September 14, 2016 attack.

62.    Mr. Raymond also suffers from the lingering emotional effects of the assault.  While he remained at Auburn, he was frightened of Mr. Mitchell and constantly concerned about his physical safety.  He worries daily about his ability to have children and urinate normally in the future, which remain uncertain.  Two years after the assault, Mr. Raymond continues to suffer from nightmares about it.

## V.    When He Assaulted Mr. Raymond on September 14, 2016, Defendant Mitchell Was a Known Predator with Multiple Prior Offenses

63.    The lead perpetrator of the assault against Mr. Raymond—Lt. Troy Mitchell—is a notorious, serial, and violent abuser who should have been terminated by DOCCS years ago, before he could attack yet another inmate.

64.    As of approximately February 2018, the State of New York had paid more than $800,000 to resolve legal claims against Defendant Mitchell arising from allegations of assault and sexual harassment that he perpetrated while employed by DOCCS.[1]

65.    Other Auburn inmates and employees have sued DOCCS because of the abuse they suffered at the hands of Defendant Mitchell.

---

[1] *See* Reuven Blau & James Fanelli, *Merciless prison guard faces investigation over waterboarding inmates, beating their genitals*, N.Y. DAILY NEWS, February 11, 2018, http://www.nydailynews.com/new-york/sadistic-prison-guard-accused-torturing-inmates-article-1.3814654 (last accessed September 24, 2018).

66.     In 2002, Defendant Mitchell and other officers assaulted Auburn inmate Dino Caroselli, breaking both of his hands, his ankle, his nose, and a tooth.  Mr. Caroselli filed a lawsuit about this brutal attack and received a settlement of $55,000 on November 20, 2008.

67.     In 2008, yet another Auburn inmate, Richie Thomas, received a $19,800 settlement after alleging that Defendant Mitchell and others assaulted him while he was handcuffed.

68.     In 2012, Penny Collins, a correction officer at Auburn, received a judgment following a jury trial of $787,837 against DOCCS.  Ms. Collins had filed a sexual harassment lawsuit against Defendant Mitchell and other officers.  Ms. Collins accused Defendant Mitchell of verbal abuse and sexually explicit bullying.

69.     Before filing her lawsuit, Ms. Collins had alerted DOCCS to Defendant Mitchell's abuses in a November 17, 2006 letter to a senior investigator in the DOCCS inspector general's office, warning him that Defendant Mitchell routinely abused and harassed those around him, and his misconduct went unreported.  Ms. Collins wrote: "My concern is in protecting others from [Mitchell].  It seems he has been allowed to continue in his abuses because he is doing so unchecked . . . Can you help me? . . . What can I do to stop him from abusing anyone else?"

70.     After she sent the letter, a single investigator conducted a single interview of Ms. Collins.  Defendant Mitchell's abuse continued.

71.     DOCCS took no disciplinary or other remedial actions against Defendant Mitchell after it received Ms. Collins' whistleblower letter and settled her lawsuit.

72.     On November 26, 2016, Defendant Mitchell and other DOCCS employees assaulted Auburn inmate Jason Berry, who later filed a grievance and Notice of Claim regarding

11

the assault.  Mr. Berry complained that during the assault Defendant Mitchell repeatedly

punched and kicked him in the groin, causing substantial damage to his testicles.

73.     In November 2017, Auburn inmate Waddell Smith filed a claim against

the State of New York, accusing Defendant Mitchell and others of assault and battery in Isolation

Room 9 of the Auburn Medical Facility.  Smith stated that Defendant Mitchell assaulted him

while he was handcuffed in hospital isolation room and punched him in the face, leaving him

with a serious injury to his eye.

74.     DOCCS finally suspended Defendant Mitchell without pay on August 31,

2017.

75.     On or before September 14, 2016, Defendant Graham knew that

Defendant Mitchell had on multiple occasions committed predatory and violent acts against

inmates purportedly in his care.

76.     On or before September 14, 2016, Defendant Graham was aware that the

State of New York had already spent nearly one million dollars to compensate victims of

Defendant Mitchell's abuse and violence.

77.     On or before September 14, 2016, Defendant Graham was aware that

Defendant Mitchell could not be trusted to facilitate a safe penological environment.  Yet

Defendant Graham continued to employ him.

78.     Defendant Graham's reckless decision to retain Defendant Mitchell in

DOCCS' employ allowed Defendant Mitchell to continue to assault and abuse individuals in the

DOCCS custody, including during the September 14, 2016 assault against Mr. Raymond.

12

**VI.**    **Defendant Hoppins Denies Mr. Raymond Medical Care for His Injuries**

79.    Defendant Hoppins heard the violent assault upon Mr. Raymond as it took place, because she was directly outside the room, guarding the entrance from passers-by.

80.    Defendant Hoppins failed and/or refused to intervene on Mr. Raymond's behalf while the assault was ongoing or provide him with medical care after the assault finally ended.

81.    Immediately after the assault, Mr. Raymond went to the Auburn infirmary, presenting with physical injuries consistent with a violent battery.  One eye was swollen shut. His cheek and left ear were swollen.  He had noticeable abrasions on his chest.  He was bleeding from his face, neck, and mouth.  His pants were wet.  And he was in extreme pain.

82.    Despite Mr. Raymond's obvious need for medical care, Defendant Hoppins failed and/or refused to treat him, violating good and accepted nursing practices.

83.    Despite Mr. Raymond's obvious need for medical care, Defendant Hoppins authorized Mr. Raymond's transfer to the solitary confinement unit on September 14, 2016.  Mr. Raymond arrived in solitary with numerous, visible injuries that required medical attention.  The unit's officers took photographs of Mr. Raymond.

84.    While in solitary confinement—bleeding and in pain—Mr. Raymond pleaded to be removed to the Mental Health Unit.

**VII.**    **Defendant Thomas Threatens and Retaliates Against Mr. Raymond**

85.    Sometime on September 14, 2016 after the assault, Mr. Raymond was removed from his cell and escorted to the infirmary by Defendant Thomas.

86.     Mr. Raymond's hands were cuffed behind his back as Defendant Thomas took him to the infirmary.  Due to his injuries, Mr. Raymond was in extreme pain and could hardly walk.

87.     Defendant Thomas threatened Mr. Raymond, in sum and substance demanding that he not disclose the cause of his physical injuries to the medical staff. Additionally, while addressing a Sergeant during the trip to the infirmary, Defendant Thomas inquired whether he could or should "kill" Mr. Raymond.

88.     During the escort, Defendant Thomas physically attacked Mr. Raymond, placed his hands around his neck and choked him in the elevator, and tripped him in the infirmary hallway.

89.     Mr. Raymond fell to the floor and hit his head, causing him further pain and physical injury.

## VIII.   Defendants Hoppins and Geer Continue to Deny Mr. Raymond Medical Care

90.     Mr. Raymond saw Defendant Hoppins at the infirmary.  She callously and with reckless disregard for Mr. Raymond's health and well-being refused to treat his obvious and serious medical condition.

91.     Instead of treating Mr. Raymond, Defendant Hoppins referred him to the Mental Health Unit at Auburn.

92.     For weeks after the assault, Mr. Raymond remained in physical agony, and repeatedly filed sick call request forms regarding blood in his urine, pain upon urination, and pain in his lower abdomen, groin, lower back, and sides.  At all times, he was denied necessary medical care or given insufficient and/or incomplete care.

93.     For example, on September 17, 2016, Mr. Raymond made a sick call complaining of abdominal pain, pain when urinating, and blood in his urine.  According to ambulatory health records, medical staff concluded there was "no problem urinating" and offered Mr. Raymond no further treatment.

94.     Mr. Raymond made other sick calls on September 28, October 6, October 12, October 19, and October 21, complaining of burning with urination, abdominal and groin pain, blood in his urine, and testicular pain.  Providers including Defendants Hoppins and Geer either did not examine him or conducted insufficient examinations.  They did not refer him for further medical treatment.  His symptoms and pain persisted.

## IX.     In Retaliation, COs Destroy Mr. Raymond's Personal Property

95.     In or around November 2016, Mr. Raymond was released from solitary confinement and returned to a cellblock.

96.      DOCCS policy requires inmates to move their personal belongings whenever their housing assignment is changed.

97.      Upon his release from solitary, Mr. Raymond had personal belongings in his cell, including diaries that he maintained during his incarceration at Auburn and copies of his grievance forms.

98.     Contrary to policy, COs prevented Mr. Raymond from transferring his personal belongings.  One CO told Mr. Raymond that all his belongings had been "lost." Another CO told him that "we threw all your shit out."

99.      Mr. Raymond filed an "Inmate Personal Property Claim," but his belongings were never returned to him.

15

### X.     **Mr. Raymond Finally Receives Treatment at Upstate Medical Center**

100.     It was not until Mr. Raymond ceased urinating altogether, began experiencing chest pain (in addition to abdominal and back pain), and lost consciousness that he was taken to the Upstate University Hospital in Syracuse ("Upstate") in January 2017—four months after he was attacked.

101.     In or around January 2017, at Upstate, Mr. Raymond finally received treatment for the injuries he suffered on September 14, 2016.

102.     This treatment included an operation to address the permanent injuries Mr. Raymond suffered on September 14, 2016.  Specifically, doctors inserted a suprapubic catheter by surgically connecting the bladder and the wall of the abdomen, allowing urinary flow—otherwise blocked by swelling of the prostate and or traumatic disruption of the urethra—into a collection bag.

103.     Mr. Raymond's injuries, both temporary and permanent, were caused by Defendant Mitchell's assault upon him on September 14, 2016, aided and abetted by Defendants Thomas, Harte, Phillips, Giancola, and John Doe, and aggravated by the indifference and neglect of Defendants Hoppins and Geer.

### XI.     **Mr. Raymond Grieves the September 14, 2016 Assault by Defendant Mitchell**

104.     On September 19, 2016, Mr. Raymond filed a facility grievance complaining about Defendant Mitchell's physical assault, requesting that criminal charges be filed against Defendant Mitchell.

105.     Throughout the grievance process, Mr. Raymond complained about the September 14, 2016 assault, the failure of the other officers to stop the assault, and Defendant Hoppins's refusal to provide him with necessary medical care.

106.     The Central Office Review Committee ("CORC") denied Mr. Raymond's grievance after conducting a facially inadequate investigation that violated good and accepted investigatory processes.  Mr. Raymond unsuccessfully appealed this denial.

107.     Auburn and the CORC never reviewed videotape evidence from the CERT prior to denying Mr. Raymond's grievance.

108.     In the alternative, Auburn and the CORC never took any disciplinary action against Defendant Hart for failing to videotape and/or for destroying the videotape made of the CERT's actions on September 14, 2016.

109.     Auburn and the CORC failed to review relevant evidence, including Mr. Raymond's medical records, and failed to interview known witnesses to the assault.

110.     In denying Mr. Raymond's grievance, the CORC directed Mr. Raymond to "address any further concerns regarding this matter to OSI [the Office of Special Investigation]."

XII.   **Mr. Raymond Grieves the September 14, 2016 Assault by Defendant Thomas**

111.     Mr. Raymond also filed a grievance regarding the verbal and physical assault upon him by Defendant Thomas on September 14, 2016 while he was being escorted to the infirmary for observation.

112.     Mr. Raymond's grievance, dated September 29, 2016, was denied by the facility, and by the Central Office Review Committee ("CORC") absent an investigation conducted consistent with good and accepted investigatory processes.  In denying Mr. Raymond's grievance of September 29, 2016, the CORC failed to review relevant evidence (including photographs of Mr. Raymond's injuries), failed to interview Mr. Raymond at any

17

point despite representing otherwise in the denial of the grievance, and failed to interview known witnesses to the assault.

113.   The actions of Auburn and the CORC in regard to Mr. Raymond's grievance of September 29, 2016 violated DOCCS policy and were solely intended to protect Defendant Thomas from an adverse finding and/or the initiation of a criminal complaint.

## XIII.   **The Office of Special Investigation Conducts a Sham Inquiry into the Assault**

114.   On or around September 19, 2016, DOCCS' Office of Special Investigation ("OSI") learned of Mitchell's assault on Mr. Raymond, when Mr. Raymond grieved the incident to the facility.

115.   OSI did not interview Mr. Raymond until months after he was assaulted and beaten by Defendant Mitchell.

116.   Mr. Raymond informed the OSI investigator about Defendant Mitchell's assault upon him, the failure of the other officers to intervene, Defendant Hoppins's failure and refusal to provide him with necessary medical care, Defendant Thomas's retaliatory assault, and Auburn's inadequate medical treatment following the Mitchell assault.

117.   According to medical records maintained by DOCCS, Mr. Raymond repeatedly complained of burning with urination, lower abdominal pain, groin pain, testicular pain, and blood in his urine at and around the time he met with the OSI investigator.

118.   According to medical records maintained by DOCCS, at no time prior to September 14, 2016 did Mr. Raymond complain of burning with urination, lower abdominal pain, groin pain, testicular pain, and blood in his urine.

119.    The medical complaints Mr. Raymond made at and around the time he met with the OSI investigator were consistent with the assault he reported.  But these reports were not deemed evidence favorable to his assault complaint against Defendant Mitchell.

120.    OSI failed to review relevant evidence, failed to interview known witnesses to the assault, failed to timely and sufficiently interview Mr. Raymond, failed to consider the retaliatory actions of Defendant Thomas, and/or otherwise failed to investigate Mr. Raymond's complaint consistent with DOCCS' policy and/or good and accepted investigatory processes.  OSI failed to consider prior evidence or patterns of misconduct by Defendant Mitchell—as alleged above in Paragraphs 63-78—when investigating Mr. Raymond's complaint against Defendant Mitchell.

121.    OSI and/or its predecessor, the Office of the Inspector General ("OIG"), determined that Mr. Raymond's allegations of assault against Defendant Mitchell were unfounded and sent Mr. Raymond a letter to this effect.

122.    OSI and/or OIG re-opened their investigation into the assault upon Mr. Raymond only after a second inmate, Jason Berry, alleged nearly identical acts of violence by Defendant Mitchell.

123.    Mr. Raymond has not been advised of the results of the re-opened investigation.

## XIV.   Defendants Falsify Charges Against Mr. Raymond

124.    In addition to the sham investigation Defendants conducted into the assault, Defendants saddled Mr. Raymond with meritless charges of misbehavior, including violent conduct, assault on staff, interference with an employee, and refusing a direct order.

These charges were levied against Mr. Raymond solely to provide cover for Lieutenant Mitchell's violent attack.

125.    Defendant O'Hora was assigned to assist Mr. Raymond in preparing for a hearing on the charges.  He did not do so.  Defendant O'Hora failed to interview or speak with Mr. Raymond's chosen witnesses, failed to help Mr. Raymond develop and present a defense at the hearing, and otherwise failed to help Mr. Raymond advocate for himself in response to the false charges.

126.    The hearing, facilitated by Correctional Hearing Officer Defendant Bauersfeld, began on September 23, 2016; Mr. Raymond was restrained throughout.  CO Phillips, CO Giancola, and one Nurse Susan Taber testified at the hearing.

127.    During the hearing, Defendant Bauersfeld turned off the recording device and told Mr. Raymond that he "had to" find him guilty of the charge for assaulting an officer. He sentenced Mr. Raymond to 90 days in solitary confinement but suspended 45 of those days. Mr. Raymond ultimately served approximately three weeks in solitary confinement.

**XV.    In Retaliation, Nurse Hoppins Denies Mr. Raymond Medical Care in February 2017**

128.    In or around February 2017, Upstate physicians operated on Mr. Raymond and installed a suprapubic catheter to address his continued urological pain and dysfunction.

129.    When Mr. Raymond required post-operative care upon his return at Auburn, he went to the medical unit on February 22, 2017.

130.    On February 22, 2017 Mr. Raymond appeared at the medical unit to obtain emergency care for injuries sustained during the assault by Defendant Mitchell.

131.    While in the medical unit for emergency care, Defendant Hoppins denied Mr. Raymond the care he required; manipulated his catheter with such force and violence as to

20

cause him severe physical pain; and advised him in sum or substance that her actions were in response to the grievance Mr. Raymond had filed against her in September 2016.

132.    Mr. Raymond filed a grievance regarding Defendant Hoppins's callous disregard for his medical needs on or around February 22, 2017.

## XVI.   **Defendant Superintendent Graham Failed to Protect Mr. Raymond**

133.    By September 14, 2016, Defendant Superintendent Harold Graham knew or should have known that Defendant Mitchell was a violent predator with a penchant for assaulting and/or abusing inmates and female correction officers.

134.    Defendant Superintendent Harold Graham was at all relevant times responsible for the safe custody and control of Auburn inmates.  DOCCS policy required him to oversee the implementation of Auburn's grievance policy, on which the safety and efficient function of a correctional facility depend.

135.    At all relevant times, Defendant Superintendent Graham knew or should have known that the grievance process at Auburn (i) systemically rejected information favorable to the grievant's claim, (ii) ignored and/or disregarded evidence in favor of the grievant, and (iii) otherwise was administered in an unprofessional manner that was intended to protect violent correctional officers from adverse findings and/or criminal charges.

136.    At all relevant times, Defendant Graham knew or should have known that the grievance process at Auburn did not include a review of videotape evidence, even when an inmate raised allegations of assault and brutality.

137.    Defendant Graham was reckless, callous, grossly negligent, and deliberately indifferent to his supervisory responsibilities, including, but not limited to, the

provision of adequate staffing, hiring, training, supervision, management, and control over

correctional staff assigned to Auburn, including Defendant Mitchell.

138.     At Auburn, predatory correctional staff—including Defendant Mitchell,

whose lengthy history of misconduct should have resulted in termination long before he was able

to assault Mr. Raymond—perpetrated violent criminal acts upon inmates with impunity.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Eighth Amendment
Excessive Force
(Against All Defendant Officers)

139.     Mr. Raymond repeats and realleges as if fully set forth herein the

allegations contained in paragraphs numbered 1 through 138.

140.     Defendant **MITCHELL's** assault upon Mr. Raymond on September 14,

2016 was unauthorized, unlawful, and applied maliciously and sadistically to cause Mr.

Raymond physical injury.

141.     Defendant **MITCHELL's** assault upon Mr. Raymond on September 14,

2016 occurred in the presence of Defendants **THOMAS, HARTE, PHILLIPS, GIANCOLA,**

and **DOE**.  Each of these Defendants wantonly, recklessly, and with depraved indifference to

human life failed to (i) aid Mr. Raymond, and/or (ii) stop Defendant Mitchell from violently

assaulting Mr. Raymond, and/or (iii) otherwise intervene on his behalf.

142.     Defendant **MITCHELL**, in assaulting Mr. Raymond, and Defendants

**THOMAS, HARTE, PHILLIPS, GIANCOLA**, and **DOE**, in failing to protect Mr. Raymond,

inflicted a cruel and unusual punishment against Mr. Raymond in violation of his rights under

the Eighth Amendment to the United States Constitution.

143.     Because of Defendants' violation of Mr. Raymond's constitutional rights,

Mr. Raymond suffered severe pain, emotional injury, and permanent physical damage to his

spinal cord, bladder, prostate, and penis.  Accordingly, Mr. Raymond is entitled to compensatory

and punitive damages against Defendants **MITCHELL, THOMAS, HARTE, PHILLIPS,**

**GIANCOLA** and **DOE** jointly and severally.

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Eighth Amendment
Deliberate Indifference to Serious Medical Needs
(Against All Officer Defendants and Defendants Hoppins and Geer)

144.    Mr. Raymond repeats and realleges as if fully set forth herein the

allegations contained in paragraphs numbered 1 through 143.

145.    The failure of Defendants **HOPPINS, GEER,** and others, to provide Mr.

Raymond with adequate treatment for his head, neck, and groin injuries demonstrated deliberate

indifference towards Mr. Raymond's serious medical condition, constituting cruel and unusual

punishment in violation of the Eighth Amendment to the United States Constitution.

146.    Because of Defendants' violation of Mr. Raymond's constitutional rights,

Mr. Raymond suffered severe pain, emotional injury, and permanent physical injury to his spinal

cord, bladder, prostate, and penis.  Accordingly, Mr. Raymond is entitled to compensatory and

punitive damages against Defendants **HOPPINS** and **GEER** jointly and severally.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Eighth Amendment
Deliberate Indifference
(Against Defendant Graham)

147.    Mr. Raymond repeats and re-alleges as if fully set forth herein the

allegations contained in paragraphs numbered 1 through 146.

148.    Defendant **GRAHAM** was reckless, callous, grossly negligent, and

deliberately indifferent to Mr. Raymond's health and well-being in exercising his supervisory

responsibilities, including but not limited to the provision of adequate staffing, hiring, training, retention, supervision, management, and control over correctional staff assigned to Auburn.

149.    The failure of Defendant **GRAHAM** (i) to provide qualified and trained correctional officers and supervisory personnel, and (ii) to establish appropriate procedures for responding to incidents of alleged misbehavior by correctional staff at Auburn, together demonstrated a depraved indifference to the life and safety of the inmates confined at the facility, constituting cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

150.    The failure of Defendant **GRAHAM** to terminate Defendant Mitchell prior to his September 14, 2016 assault on Mr. Raymond constituted a grossly negligent managerial decision and ignored years of evidence that Mitchell was a dangerous predator.

151.    At all relevant times, Defendant **GRAHAM** knew of Mr. Raymond's grievances about the September 14, 2016 assault, and failed to remedy that violation of his rights.

152.    At all relevant times, Defendant **GRAHAM** knew of the false charges lodged against Mr. Raymond, knew that the disciplinary hearing regarding these charges yielded a term of solitary confinement whose conditions amounted to an atypical and significant hardship on Mr. Raymond, and failed to remedy that violation of his rights.

153.    Because of Defendant **GRAHAM's** violation of Mr. Raymond's constitutional rights, Mr. Raymond suffered emotional injury, severe pain, and permanent physical injury to his spinal cord, bladder, prostate, and penis.  Mr. Raymond is thus entitled to compensatory and punitive damages against Defendant **GRAHAM**.

24

## FOURTH CAUSE OF ACTION
42 U.S.C. § 1983 – Fourteenth Amendment
Procedural Due Process
(Against Defendants Graham, Bauersfeld, and O'Hora)

154.    Mr. Raymond repeats and re-alleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 153.

155.    After the assault against Mr. Raymond, Defendants filed false charges against him, then conducted sham investigations and a deficient hearing into those charges.

156.    Defendants **BAUERSFELD** and/or **O'HORA** violated Mr. Raymond's constitutional rights to procedural due process by failing to assist Mr. Raymond in establishing a defense against the false charges, failing to interview Mr. Raymond's requested witnesses, denying him the ability to submit written arguments, physically confined him during the hearing, and submitting an insufficient written decision on the charges.

157.    Defendant **GRAHAM** reviewed the results of Mr. Raymond's disciplinary hearing as well as the false charges against him and declined to change the confinement time Defendant **BAUERSFELD** had imposed on Mr. Raymond.  Even after learning that Mr. Raymond's rights had been violated throughout the charge and hearing process, Defendant **GRAHAM** failed to remedy those violations or otherwise prevent the implementation of Mr. Raymond's punishment.

158.    Because of the violation of Mr. Raymond's constitutional rights by Defendants Mr. Raymond was sentenced to 90 days in solitary confinement without due process of law and served approximately 21 days of that time.  Accordingly, Mr. Raymond is entitled to compensatory and punitive damages against Defendants **GRAHAM**, **BAUERSFELD**, and **O'HORA** jointly and severally.

**FIFTH CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourteenth Amendment
Failure to Intervene
(Against Defendants Thomas, Harte, Phillips, and Giancola)

159.    Mr. Raymond repeats and re-alleges as if fully set forth herein the allegations contained in paragraphs numbered 1 through 158.

160.    Throughout the entirety of Defendant **MITCHELL**'s vicious assault against Plaintiff on September 14, 2016, Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA** stood by and watched.  They did not assist Plaintiff or otherwise attempt to halt the attack or deter Defendant **MITCHELL**.

161.    Correctional officers who fail to intercede in the use of excessive force by another officer are liable for the preventable harm caused by the actions of that other officer.

162.    Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA** knew that Defendant Mitchell was violating Plaintiff's constitutional rights by using objectively unreasonable force against him during that brutal incident.

163.    Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA** had a reasonable opportunity to intervene to prevent those violations.

164.    Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA** failed to take reasonable steps to intervene.

165.    Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA** violated Plaintiff's constitutional rights when they failed to intervene in Defendant **MITCHELL**'s assault against Plaintiff.

166.    As a direct and proximate result of the unlawful conduct of Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA**, Plaintiff suffered the injuries hereinbefore

26

alleged.  Accordingly, Mr. Raymond is entitled to compensatory and punitive damages against

Defendants **THOMAS**, **HARTE**, **PHILLIPS**, and **GIANCOLA** jointly and severally.

### SIXTH CAUSE OF ACTION
Negligent Training, Supervision, and Retention
(Against Defendant Graham)

167.    Mr. Raymond repeats and re-alleges as if fully set forth herein the

allegations contained in paragraphs numbered 1 through 166.

168.    At all relevant times, Defendant **MITCHELL** was employed by Auburn

and trained, supervised, and retained by Defendant **GRAHAM**.

169.    Defendant **GRAHAM** had a duty to protect Plaintiff from excessive force

implemented by Auburn's correctional officers.

170.    Defendant **GRAHAM** breached that duty by failing to sufficiently train,

supervise, and discipline/terminate Defendant **MITCHELL**.

171.    Defendant **GRAHAM** knew or should have known that Defendant

**MITCHELL** had a volatile, explosive temperament, a documented and persistent history of

violence against inmates, and was wholly unfit for the responsibilities of a correctional officer

charged with overseeing inmate safety and well-being.  Specifically, Defendant **GRAHAM**

knew or should have known that Defendant **MITCHELL**'s violent propensities had already

resulted in numerous instances of excessive force and physical altercations with inmates even

before his vicious attack on Plaintiff.

172.    Defendant **GRAHAM**'s negligence is apparent from a review of

Defendant **MITCHELL**'s record, which is replete with allegations of excessive force that

yielded insufficient discipline and/or retraining.  Defendant **MITCHELL**'s record amply

demonstrated his inability to safely and responsibly perform the duties with which he was charged.  Yet Defendant **GRAHAM** continued to employ him.

173.    Defendant **GRAHAM** failed to sufficiently discipline or terminate Defendant **MITCHELL** for his repeated violence and misconduct, failed to modify or limit Defendant **MITCHELL**'s responsibilities or position of command, failed to sufficiently supervise Defendant **MITCHELL** in the execution of his duties as a correctional officer, including standards prohibiting the use of excessive and/or unreasonable force against inmates, and failed to sufficiently train Defendant **MITCHELL** as to the requirements of his position as a correctional officer.

174.    Defendant **GRAHAM**'s acts and omissions have encouraged, ratified, enforced, and sanctioned Defendant **MITCHELL**'s unconstitutional misconduct.

175.    As a direct and proximate result of Defendant **GRAHAM**'s negligence in training, supervising, and retaining Defendant **MITCHELL**, Plaintiff suffered the injuries hereinbefore alleged, and is entitled to compensatory and punitive damages against Defendant **GRAHAM**.

**JURY TRIAL DEMANDED**

176.    Mr. Raymond demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an Order

granting him compensatory and punitive damages against each Defendant on the first, second,

third, and fourth causes of action; granting plaintiff reasonable attorneys' fees, costs and

disbursements pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C.

§ 1988; and granting Plaintiff such other and further relief as this Court deems just and equitable.

Dated: New York, New York
        March 1, 2019

                                    EMERY CELLI BRINCKERHOFF
                                    & ABADY LLP

                                    By: _____/s/_____
                                            Katherine R. Rosenfeld
                                            Emma L. Freeman
                                            600 Fifth Avenue, 10th Floor
                                            New York, New York 10020
                                            (212) 763-5000

                                    *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MATTHEW RAYMOND,

                              Plaintiff,                    Civil Action No. 18-cv-01467

            v.

TROY MITCHELL, Lieutenant at Auburn
Correctional Facility, CHARLES THOMAS,
Correction Officer at Auburn Correctional Facility,
THOMAS HARTE, Sergeant at Auburn
Correctional Facility, THOMAS PHILLIPS,
Correction Officer at Auburn Correctional Facility,
THOMAS GIANCOLA, Correction Officer at
Auburn Correctional Facility,
HAROLD D. GRAHAM, Former Superintendent of
Auburn Correctional Facility, BRIAN
BAUERSFELD, Correction Hearing Officer at
Auburn Correctional Facility, BRIAN O'HORA,
Correction Officer at Auburn Correctional Facility,
AIMEE HOPPINS, R.N., Dr.
DEBORAH GEER, and "JOHN DOE", Correction
Officer at Auburn Correctional Facility,

                              Defendants.

## NOTICE OF DOCUMENT SUBPOENA

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Plaintiff, by and through his attorneys, Emery Celli Brinckerhoff Abady Ward &

Maazel LLP, will cause the attached subpoena to be served upon the following:

Director Christopher A. Wray
Federal Bureau of Investigation Headquarters
Record/Information Dissemination Section,
935 Pennsylvania Avenue NW, Washington, DC 20535-0001

A copy of the subpoena is attached to this notice and is hereby served upon you.

1

Dated: September 29, 2020
       New York, New York

                                    EMERY CELLI BRINCKERHOFF ABADY
                                    WARD & MAAZEL LLP

                                     /s
                                    Katherine Rosenfeld
                                    Emma Freeman
                                    600 Fifth Avenue, 10th Floor
                                    New York, New York 10020
                                    (212) 763-5000

                                    *Attorneys for Plaintiff*

To:

Barry Nelson Covert
Diane M. Perri Roberts
Patrick Mackey
Lipsitz Green Scime Cambria LLP
42 Delaware Avenue, Suite 120
Buffalo, NY 14202

Cheryl Meyers Buth
Meyers Buth Law Group
21 Princeton Place
Orchard Park, NY 14127

*Attorneys for Defendants*