# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

------------------------------------------------

**MATTHEW RAYMOND,**

      Plaintiff,

 -vs-         9:18 Civ. No. 1467 (GLS)(ATB)

**TROY MITCHELL,** Lieutenant at Auburn
Correctional Facility, **CHARLES THOMAS,**
Correction Officer at Auburn
Correctional Facility, **THOMAS HARTE,**
Sergeant at Auburn Correctional Facility,
**THOMAS PHILLIPS,** Correction Officer at
Auburn Correctional Facility, **THOMAS GIANCOLA,**
Correction Officer at Auburn Correctional
Facility, **HAROLD D. GRAHAM,** Former
Superintendent of Auburn Correctional
Facility, **BRIAN BAUERSFELD,** Correctional
Hearing Officer of Auburn Correctional
Facility, **BRIAN O'HORA,** Correction Officer at
Auburn Correctional Facility, **AIMEE HOPPINS,**
R.N., Dr. **DEBORAH GEER,** and **"JOHN DOE",**
Correction Officer at Auburn Correctional
Facility,

      Defendants.
------------------------------------------------

Examination before trial of **MATTHEW RAYMOND**, taken pursuant to Notice, taken in the offices of ACR of WNY, 170 Franklin Street, Buffalo, New York 14202, taken on November 5, 2020 commencing at 10:02 a.m., ending at 6:53 p.m., held before Carly J. DiNatale, Notary Public.

1   Q. Where exactly is Sherman, New York?

2   A. Chautauqua County, between Ripley and Clymer.

3   Q. Okay. C.R., your daughter, is her mother

4      Michelle Raymond?

5   A. Yes.

6   Q. Okay. So you have one child with Michelle

7      Raymond and one child with Adrian Frew?

8   A. Frew. Yes.

9   Q. Now, you mentioned earlier you're currently

10     married with Michelle Raymond. Are you two

11     actively looking to have more children?

12   A. Yes.

13   Q. Mr. Raymond, are you currently employed?

14   A. I'm on medical leave.

15   Q. Okay. You mentioned earlier that, I think it

16     was, 115 Hamilton that you have some tenants.

17     Is that a property owned by you or someone

18     else?

19   A. It's a property owned by my family.

20   Q. Okay. Do you know, like, on the deed whose

21     name is the actual owner?

22   A. I believe it would be my Aunt Tara Dudeck.

23   Q. Who is that?

1   A. I believe.

2   Q. How is that person related to you?

3   A. She's my aunt, by marriage.

4   Q. Okay.  Do you rent any portion of 111 Hamilton

5      or is that a single family residence?

6   A. Single family.

7   Q. Who owns that residence, 111?

8   A. It's jointly owned by myself and my mother,

9      Sylvia Raymond.

10  Q. Where does your mother live?

11  A. My mother lives 40 -- she lives in Kenmore.

12  Q. Now, with the tenants at 111 Hamilton, do you

13     receive any of the rent that they pay?  Do you

14     receive some of that income?

15  A. I do not.  I -- no, I do not.

16  Q. Okay.  So is Ms. Dudeck the person that

17     receives that income, that rental income?

18  A. I believe so.

19  Q. Now, you mentioned that you're not currently

20     employed, you're on medical leave.  When was

21     the last time you were employed?

22  A. It would be September or August.  Yeah,

23     August.  Sorry.

1    Q. Of this year?

2    A. Yes.

3    Q. Okay.  Where were you working?

4    A. K&S Contractor Supply, 1776 Gunville Road,

5       Lancaster, New York.

6    Q. And that's KNS?

7    A. K&S.

8    Q. Okay.  And that's in Lancaster?

9    A. Yes.

10   Q. So you worked there until August.  When did

11      you first start there?

12   A. I believe it was March.

13   Q. Of this year?

14   A. Yes.

15   Q. Okay.  So soon after you were released?

16   A. Yes.

17   Q. Okay.  What type of work were you doing for

18      K&S Contractors?

19   A. I was in their concrete pouring division.

20   Q. Okay.  So were you actually out in the field

21      pouring concrete or were you in, like, a sales

22      position?  What type of work were you actually

23      doing?

1    **MS. FREEMAN:** Object to the form. Time

2    frame, Pat, if you can.

3    **BY MR. MACKEY:**

4  Q. Any time from March to August, while he was at

5    the K&S Contractor.

6  A. I was in the field, and also in their

7    production factory.

8  Q. And how did you get this job at K&S? Did you

9    know someone there or was it just an open

10   availability of employment?

11 A. I was informed by a person I know in the

12   construction industry.

13 Q. Okay. So you were somewhat referred to that?

14 A. Yes. Yes.

15 Q. Now, you mentioned medical leave. Did you go

16   on medical leave in August of this year?

17 A. Yes.

18 Q. Okay. So there wasn't any job between K&S and

19   going on medical leave?

20 A. No.

21 Q. Okay. Was there any job -- any other job

22   during the period of March 2020 to August

23   2020?

1    A. No.

2    Q. Okay. What happened to cause you to have to

3        go on medical leave?

4    A. My health is declining.

5    Q. I think you're breaking up on us.

6            **MS. FREEMAN:** I don't want to cut off

7        your answer, Matt, but you seem to be frozen,

8        visually.

9            **MR. MACKEY:** I think we lost him

10       altogether.

11           (Discussion held off the record.)

12   **BY MR. MACKEY:**

13   Q. Mr. Raymond, when we got cut off there, I was

14       asking you why you went on your current

15       medical leave. What happened?

16   A. My health declined because of the medical

17       issues resulting from the incident on

18       September 14th, 2016.

19   Q. Can you be a little more specific? What do

20       you mean that your health declined?

21           Lost him again.

22           **MS. FREEMAN:** Matt, can you hear us?

23           (Discussion held off the record.)

1     there's no need for you to testify on the

2     record about your views here.

3     **BY MR. MACKEY:**

4     Q. Okay. Now, we were talking about the medical

5     leave that you went on. And that started in

6     August, correct?

7     A. Correct.

8     Q. Okay. And since August, have you gone back to

9     work at all, either with K&S or anywhere else?

10    A. No.

11    Q. Okay. And the medical leave that you're on,

12    was that instructed by your doctors?

13    A. Yes.

14    Q. Okay. Now, recently we learned that there was

15    a need for you to have surgery later this

16    month; is that correct?

17    A. Yes.

18    Q. Okay. What type of surgery is that?

19    A. It's called a bladder augmentation surgery.

20    Q. And --

21    A. There's more -- there's more words to it, but

22    it boils down to bladder augmentation.

23    Q. And what is your understanding of what a

1    Q. Mr. Raymond, on September 13th of 2014 --

2       2016, I'm sorry, during that date -- well, let

3       me back up. Any time during September 13th to

4       September 14th of 2016, did you take

5       marijuana?

6    A. No.

7    Q. Okay. Any time on September 13th or September

8       14th, 2016, did you take heroin?

9    A. No.

10   Q. Okay. Any time between September 13th and

11      September 14th of 2016, did you take Suboxone?

12   A. No.

13   Q. Okay. Any time in the month of September of

14      2016, did you take any of those three drugs?

15   A. No.

16   Q. Okay. Do you know when you last took any of

17      those drugs while you were at Auburn?

18      **MS. FREEMAN:** Object to the form. And

19      object on the basis of the Fifth Amendment.

20      Mr. Raymond, please don't answer that

21      question.

22      **BY MR. MACKEY:**

23   Q. Now, Mr. Raymond, I think you mentioned

1   earlier when you were released earlier this

2   year you came -- you were released from

3   Attica, correct?

4  A. Correct.

5  Q. Okay. Who is your parole officer right now?

6  A. On file, it's Latoya Taylor. But she's on

7   leave, and I don't remember the parole officer

8   who is handling my case in the interim.

9  Q. Latoya. What was the name? Latoya Taylor?

10  A. Yes.

11  Q. Do you remember when you last met with

12   Ms. Taylor or spoke to her?

13  A. On phone interview, because of my medical

14   condition. And the last time I spoke to

15   her -- well, to Ms. Taylor, it's been,

16   probably, a month.

17  Q. Okay. Have you spoken to any other parole

18   officers since then?

19  A. Yes. I spoke to a parole officer last

20   Thursday.

21  Q. Okay. That was the last time?

22  A. Yes.

23  Q. And do you remember that individual's name at

1  all?

2  A. No.

3  Q. Was it a male or a female?

4  A. Female.

5  Q. Okay. First name? You don't remember first

6     name?

7  A. I do not remember.

8  Q. And this was by phone?

9  A. Yes.

10 Q. How is your relationship with your parole

11    officer? Are you getting along with your

12    parole officer?

13 A. Yes.

14 Q. Okay. Have you had any problems with your

15    parole officer?

16 A. No.

17 Q. Have there been any issues that you've been

18    claimed to have violated your parole at all?

19         **MS. FREEMAN:** Objection.

20         **THE WITNESS:** Any claim or who claims?

21    I don't understand the question.

22    **BY MR. MACKEY:**

23 Q. During your discussions -- the various

1       discussions you've had with your parole

2       officer since you've been released, has there

3       been any discussions with that person that you

4       did violate or may have violated your parole

5       at any time?

6              **MS. FREEMAN:**  Objection.

7              **THE WITNESS:**  Possibly.

8       **BY MR. MACKEY:**

9       Q.  Do you know what was the basis for that claim?

10      A.  An alleged criminal activity.

11      Q.  Okay.  What was that?

12             **MS. FREEMAN:**  Mr. Raymond, I'm going to

13      instruct you not to answer on the basis of the

14      Fifth Amendment.  Mr. Mackey, I'll give you

15      some leeway here, but not much.

16             I also want to put on the record, Mr.

17      Mackey, I'm still having difficulties with

18      your audio.  You remain in and out.  I don't

19      know if there's any way to work with the mic

20      as Diane had suggested back at the beginning

21      of this deposition.

22             **MR. MACKEY:**  Carly, are you having

23      problems hearing me?

1        **THE COURT REPORTER:**  No.

2        **MR. MACKEY:**  Okay.

3        **MS. FREEMAN:**  Mr. Mackey, I'm also

4    participating in this deposition, and it's

5    significant that, as Mr. Raymond's attorney, I

6    can hear you.  So if you could just keep your

7    voice up, and I will keep noting when I'm

8    struggling to hear.

9        **BY MR. MACKEY:**

10   Q.  Yeah, you told me already.

11        Mr. Raymond, how many times -- well, let

12   me back up.  You said that there's been claims

13   that there was criminal activity.  How many

14   claims are there?

15   A.  Two.

16   Q.  Okay.  Have you been arrested for either of

17       those two claims?

18   A.  Yes.

19   Q.  Okay.  For both or just one of the two?

20   A.  Both.

21   Q.  Okay.  And when was the first time you were

22       arrested?  What month, if you recall?

23   A.  I don't remember.  July or August.

1    Q. Okay. So sometime during the summer?

2    A. Yes.

3    Q. Okay. What are the criminal allegations

4       against you? What are they charging against

5       you?

6          **MS. FREEMAN:** I'm going to object.

7       Matt, you can identify what the charges were,

8       and no more.

9          **THE WITNESS:** Attempted burglary third,

10      criminal mischief, petty larceny.

11   **BY MR. MACKEY:**

12   Q. And this was with the one that happened during

13      the summer?

14   A. Both.

15   Q. Okay. Well, let's talk about the first one.

16      What charges are related to the first arrest?

17         **MS. FREEMAN:** Objection. Again, Matt,

18      you can identify the charges, and no more.

19         **THE WITNESS:** Attempted burglary third,

20      criminal mischief and petty larceny, I

21      believe.

22   **BY MR. MACKEY:**

23   Q. Okay. And to what event are those charges

1  related?  What burglary are the charges
2  related to?
3       **MS. FREEMAN:**  Object to the form.  Matt,
4  I'm going to instruct you not to answer on the
5  basis of the Fifth Amendment.
6       **MR. MACKEY:**  I'm just asking about the
7  charges.  I'm not asking if he did it or not.
8  I'm just asking what are the charges based on.
9  What have you -- if there's a charge of
10  attempted burglary, what burglary is
11  Mr. Raymond claimed to have conducted.
12       **MS. FREEMAN:**  I'm going to object.
13  Mr. Raymond has a pending criminal case.  He
14  is not going to answer this question on the
15  basis of the Fifth Amendment.  He's going to
16  identify charges for you, which I believe he's
17  already done, but no more than that.
18       **MR. MACKEY:**  I think a factual question
19  of what the charges are related to, what event
20  it's related to is not subject to or protected
21  by the Fifth Amendment.  I'm not asking if
22  he's guilty or not.  I'm just asking what are
23  the charges related to.

1        **MS. FREEMAN:** I'm not going to allow him

2        to answer that question, Mr. Mackey. He can

3        tell you what the charges are, and nothing

4        more.

5    **BY MR. MACKEY:**

6    Q. Mr. Raymond, the second arrest, when did that

7        happen, if you recall?

8    A. September, I believe.

9    Q. This past September?

10   A. Yes.

11   Q. And what are the charges related to the

12       September arrest?

13   A. I think it's criminal trespass, criminal

14       mischief, I believe.

15   Q. Any other charges, other than those two?

16   A. I don't remember. I don't remember.

17   Q. And what specific event are you being charged

18       for criminal trespassing, criminal mischief?

19       **MS. FREEMAN:** Same objection.

20       Mr. Raymond, please don't answer on the basis

21       of the Fifth Amendment.

22   **BY MR. MACKEY:**

23   Q. Okay. So we have two separate criminal

1   charges; one from the summer of 2020, one from

2   September of 2020. Are there any others or is

3   it just the two?

4 A. There are no others.

5 Q. Okay. And to your knowledge, are both of

6   those criminal charges still open? Do you

7   have court appearances for those?

8 A. Yes.

9 Q. Do you know -- related to the first charge of

10   attempted burglary third, criminal mischief

11   and petty larceny, do you know when you are

12   expected back in court?

13 A. I do not.

14 Q. Okay. And with respect to the second event in

15   September -- criminal trespassing, criminal

16   mischief -- do you know when you're expected

17   back in court for that particular charge?

18 A. I believe it's the 12th of November. I am not

19   sure which one it is, because my attorneys do

20   the scheduling. But I believe it's the 12th

21   of November.

22 Q. Okay. Do you know what that court appearance

23   is for?

1          **MS. FREEMAN:** Object to the form. Asked

2     and answered.

3          **THE WITNESS:** Maybe attempted burglary

4     third, criminal mischief, petty larceny.

5     **BY MR. MACKEY:**

6  Q. No, I'm not asking about the charges. I just

7     meant the hearing itself in November. Is it a

8     preliminary hearing? Is it a trial? I'm just

9     wondering if you know what that is for.

10         **MS. FREEMAN:** I'm going to object, Matt,

11    insofar as that knowledge comes from

12    conversations you had with your attorney in

13    that matter. If you can answer independent of

14    those conversation, go ahead. But otherwise,

15    I'll instruct you not to answer.

16         **THE WITNESS:** Yeah, I can't answer.

17    **BY MR. MACKEY:**

18  Q. Okay. Were you in court at any time for

19    charges related to the September arrest?

20  A. I actually have not been in court at any time

21    for this arrest.

22  Q. Did you appear by video or remotely for those

23    charges?

1      **MS. FREEMAN:**  Object to the form.  Asked

2      and answered.

3      **BY MR. MACKEY:**

4  Q.  I asked him if it was in court.  I'm now

5      asking him if he was there remotely at all, if

6      there was a remote conference.

7  A.  No.

8  Q.  Okay.  With respect to parole, are you

9      required to receive any type of mental health

10     care services?

11 A.  Yes.

12 Q.  Okay.  Through what organization are you

13     receiving those services?

14 A.  BryLin.

15 Q.  BryLin.  Okay.  How is that being conducted?

16     Do you go in personally for these services or

17     is it something you're just doing remotely or

18     over the phone?

19 A.  Via phone.

20 Q.  Okay.  How often?

21 A.  Weekly.

22 Q.  And that's every since you were released?

23 A.  Shortly thereafter.

STATE OF NEW YORK)

      SS:

COUNTY OF ERIE   )


   I, CARLY J. DINATALE, a Notary Public in and for the State of New York, County of Erie, DO HEREBY CERTIFY that the deposition of MATTHEW RAYMOND was taken down by me in a verbatim manner by means of Machine Shorthand, on November 5, 2020. That the deposition was then reduced in writing under my direction. That the deposition was taken to be used in the above-entitled action. That the said deponent, before examination, was duly sworn by me to testify to the truth, the whole truth and nothing but the truth, relative to said action.

   I further CERTIFY that the above-described transcript constitutes a true and accurate and complete transcript of the testimony.

*Carly J. DiNatale*
-----------------------------------
Carly J. DiNatale,
Notary Public