UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW RAYMOND,

       Plaintiff,

v.                                                                     Civil Action No. 18-cv-01467

TROY MITCHELL, Lieutenant at Auburn
Correctional Facility, CHARLES THOMAS,
Correction Officer at Auburn Correctional Facility,
THOMAS HARTE, Sergeant at Auburn Correctional
Facility, THOMAS PHILLIPS, Correction Officer at
Auburn Correctional Facility, THOMAS GIANCOLA,
Correction Officer at Auburn Correctional Facility,
HAROLD D. GRAHAM, Former Superintendent of
Auburn Correctional Facility, BRIAN BAUERSFELD,
Correction Hearing Officer at Auburn Correctional
Facility, BRIAN O'HORA, Correction Officer at Auburn
Correctional Facility, AIMEE HOPPINS, R.N., Dr.
DEBORAH GEER, and "JOHN DOE", Correction
Officer at Auburn Correctional Facility,

       Defendants.

_____

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH
SUBPOENA SERVED UPON THE NEW YORK STATE BOARD OF PAROLE**

---

LIPSITZ GREEN SCIME CAMBRIA LLP
*Attorneys for Defendants Mitchell, Thomas,*
*Harte, Phillips, Giancola, Graham and Geer*
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Defendants Troy Mitchell, Charles Thomas, Thomas Harte, Thomas Phillips, Thomas Giancola, Harold Graham and Dr. Deborah Geer (collectively, the "Defendants"), in opposition to the motion filed by Plaintiff, Matthew Raymond ("Mr. Raymond"), seeking an Order quashing the Subpoena served upon the New York State Board of Parole (the "Subpoena"). All relevant facts and exhibits opposing the motion are set forth in the accompanying Declaration of Patrick J. Mackey sworn to on May 10, 2021 (the "Mackey Declaration"). These facts are incorporated herein and will not be repeated unless necessary.

## ARGUMENT

### I. MR. RAYMOND DOES NOT HAVE STANDING TO BRING THE MOTION TO QUASH BECAUSE CONTRARY TO HIS CONTENTION, THE PAROLE RECORDS REQUESTED IN THE SUBPOENA ARE NOT PROTECTED BY ANY APPLICABLE PRIVILEGE.

When a party moves to quash a non-party subpoena, it first must establish that it has standing to quash the subpoena. Proof of standing is required because "[a] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *U.S. v. Mount Sinai Hospital*, 169 F.Supp.3d 538, 545 (S.D.N.Y. 2016). "The claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served." *Id. citing Samad Bros., Inc. v. Bokara Rug Co., Inc.*, 2010 WL 5094344 at *2 (S.D.N.Y. Nov. 30, 2010). When determining whether a party seeking to quash a nonparty subpoena is entitled to a privilege, the court "must first decide on whether the privileges [the party] seeks to invoke are governed by federal law or state law." *Bulow v. Bulow*, 811 F.2d 136, 141 (2nd Cir. 1987). "It is axiomatic that the burden is on the party claiming the protection of a

2

privilege to establish those facts that are essential elements of the privileged relationship." *Bulow*, 811 F.2d at 144.

In this case, Mr. Raymond contends that he has standing to file the pending motion to quash because he has a personal right or privilege with regard to the requested parole file. Mr. Raymond's contention, however, is misguided because, as explained below, he has failed to establish that the privilege he claims is based upon federal law. As such, Mr. Raymond has failed to satisfy the legal burden placed on him.

In his motion, Mr. Raymond asserts that his parole file is confidential and, thus, privileged because under New York Executive Law § 259-k, the State "explicitly protects the confidentiality of parole records and explicitly prohibit release of the materials" requested in the Subpoena. (*See* pg. 1 to Mr. Raymond's Memorandum of Law.) Notably, nowhere in his motion did Mr. Raymond identify a privilege based on federal law. Mr. Raymond's failure is critical because if he is unable to establish that his parole file is privileged under federal law, he has no standing to bring this motion.

Mr. Raymond must prove a privilege based on federal law rather than state law because "federal common law rather than state law is to be looked to in evaluating assertions of privilege where the underlying legal issues are matters of federal law." *Koster v. Chase Manhattan Bank*, 1984 WL 833, *3 (S.D.N.Y. Sept. 5, 1984). Indeed, "[i]n cases in which federal law will provide the rules upon which the case will be decided, privilege founded in state law does not control." *U.S. v. New York State Dept. of Taxation and Finance*, 807 F.Supp. 237, 243 (N.D.N.Y. 1992) (wherein the court refused to accept the respondent's argument that it did not have to comply with an administrative subpoena served upon it because the matter concerned federal law and state privileges are considered "only when state law will provide the rule of decision"); *see also U.S. v.*

4177778, 2, 066742.0001

*One Parcel of Property Located at 31-33 York Street*, 930 F.2d 139 (2nd Cir. 1991) (disregarding the defendant's privilege argument because the privilege was based on state law and the matter was decided under federal law).

In this case, Mr. Raymond has raised six causes of action, and all but one of them are brought pursuant to 42 U.S.C. § 1983 (the five federal causes of action are based on the Eighth and Fourteenth Amendments). (*See* Exhibit A to the Mackey Declaration.) Since the five causes of action are based on federal law, it is evident that this case will be decided on federal law. As such, Mr. Raymond's privilege argument brought pursuant to New York Executive Law § 259-k is not applicable to this case.

The fact that the sixth cause of action in the Amended Complaint is brought pursuant to state common law (negligence) is inconsequential because in cases where both federal and state causes of action are raised, "the courts have consistently held that the federal law of privilege should govern." *Koster*, 1984 WL at *3. Indeed, "[t]he Federal Law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." *Bulow*, 811 F.2d at 141. "When the information made privileged by state law is 'relevant for both the federal and the state claims, the movant must rely upon a privilege developed by the federal courts and not state law privileges.'" *Sterling Merchandise, Inc. v. Nestle, S.A.*, 470 F.Supp.2d 77, 82 (D. Puerto Rico, 2006); *citing Sirmans v. City of South Miami*, 86 F.R.D. 492 (S.D.Fl. 1980). Accordingly, in order for Mr. Raymond to have standing for the pending motion to quash, he first must establish that his parole file is privileged under federal law – something he failed to do in his motion.

4

Mr. Raymond likely failed to identify a federal privilege related to his state controlled parole file because it appears that no such privilege exists. Without a federal privilege, Mr. Raymond has no standing to bring the pending motion. For this reason alone, the motion to quash must be denied. Similar decisions were made in cases where a movant was unable to establish standing through an existing federal privilege.

For instance, in *Koster*, the defendant served a subpoena upon the plaintiff's gynecologist seeking to depose the doctor and obtain medical records from the doctor. The plaintiff objected to the request by arguing that the requested medical information was protected under the state recognized doctor-patient privilege. The court disregarded the plaintiff's objection and ordered the production of the requested medical information because: (i) the state privilege was inapplicable because the lawsuit was brought pursuant to the federal Civil Rights Act and Equal Pay Act; and (ii) the Second Circuit has ruled that no doctor-patient privilege existed in federal common law. *See Koster*, 1984 WL at *4. A similar decision was rendered in *Grand Jury Subpoena Dated November 18, 1994 v. U.S.*, 1995 WL 84173 (W.D.N.Y. 1995), where the court, in denying a motion to quash filed by a doctor who was subpoenaed to produce medical records, determined that "[b]ecause no physician-patient privilege exists at common law, most courts which have considered the matter have concluded that none exists in federal law." *Grand Jury*, 1995 WL 84173, *1.

Other "privileged" information protected by state statutes is also available for disclosure in federal lawsuits when the information is not considered privileged under federal law. In *U.S. v. New York State Dept. of Taxation and Finance*, the United States Offices of Inspector General served a subpoena upon the New York State Department of Taxation and Finance (hereinafter, the "Department") requesting the production of wage records of approximately 150 participants of the

5

Department's Job Training Partnership program. The Department refused to disclose the records claiming they were absolutely privileged under New York's Tax Law. The court rejected the Department's argument and ordered it to produce the subpoenaed wage records because the State's privilege was inapplicable and because no similar privilege existed under federal law.

In this case, like in the cases mentioned above, Mr. Raymond only asserts a privilege based on state law. There appears to be no equivalent privilege based on federal law. Thus, no federal privilege exists protecting Mr. Raymond's parole records. Without such a privilege, Mr. Raymond has no standing to bring the pending motion to quash.

Finally, in the event Mr. Raymond argues that his parole records are protected pursuant to the confidentiality provided under 28 C.F.R. § 2.88[1], such argument fails because § 2.88 only applies to parole records maintained and controlled by the U.S. Parole Commission and the Commission only handles parole matters related to federal prisoners. *See* 28 C.F.R. § 2.1. Since Mr. Raymond was not a federal prisoner, the confidentiality of federal parole records provided under § 2.88 does not apply to him or his state controlled parole records.

In light of the above, it is evident that Mr. Raymond failed to establish that his parole records are privileged pursuant to any applicable federal law or statute. As such, Mr. Raymond has failed to establish that he has standing to bring the pending motion to quash. Accordingly, this Court, as a matter of law, should deny the motion.

---

[1] 28 C.F.R. § 2.88(a) provides that "[c]onsistent with the Privacy Act of 1974 (5 U.S.C. 552(b)), the contents of parole records shall be confidential and shall not be disclosed outside the Commission except as provided in paragraphs (b) and (c) of this section."

4177778, 2, 066742.0001

II.   IN THE EVENT, *ARGUENDO*, THIS COURT DETERMINES THAT MR. RAYMOND'S PAROLE RECORDS ARE PROTECTED BY A PRIVILEGE, THE MOTION TO QUASH SHOULD STILL BE DENIED BECAUSE THE RECORDS ARE RELEVANT TO THE DEFENDANTS' DEFENSE OF THIS LAWSUIT.

In the event this Court determines that Mr. Raymond's parole file is privileged under New York Executive Law § 259-k, such finding does not automatically result in the granting of the motion to quash because: (i) federal courts have generally held that state law privileges, when related to the facts of the case, "may not be asserted in connection with litigation in the federal courts of matters of federal question" *Franzon v. Massena Memorial Hospital*, 189 F.R.D. 220, 224 (N.D.N.Y. 1999); and (ii) Mr. Raymond's parole file likely holds relevant information that may be used to impeach Mr. Raymond at trial.

It is not uncommon for parole files to be produced in litigation despite New York Executive Law § 259-k.   For instance, in *Maggio v. State*, 88 A.D.2d 1087 (3rd Dept. 1982), a victim who was robbed, raped and assaulted sought the production of the parole file of the parolee who attacked her.   The request was made in a lawsuit the victim filed against New York State for negligent supervision of the parolee.   The court, notwithstanding Executive Law § 259-k, used its broad discovery discretion and ordered the production of certain portions of the parole file, after an in camera review, because the parole file was material and necessary to the case.   Similarly, although probation records are likewise deemed privileged and confidential under New York law, the court in *People v. Price*, 100 Misc.2d 372 (1979), ordered the production of subpoenaed probation records because "the defendant intends to use the records to impeach the credibility of the prosecution's chief witness at trial and to create reasonable doubt as to his guilt." *Price*, 100 Misc.2d at 377-78.

In this case, the privilege asserted by Mr. Raymond is provided under New York State law. Critically, as stated above, federal courts are to provide state-created privileges limited deference.

7

Indeed, state-created privileges, when applicable to the facts of a case, are to be "construed narrowly" and "must yield when outweighed by a federal interest in presenting relevant information to a trier of fact." *One Parcel of Property*, 930 F.2d at 141; *see also U.S. v. Fell*, 2013 WL 12385306 (D. Vermont, Dec. 19, 2013) (wherein the court denied a motion to quash and ordered the "subpoenaed probation and parole records be produced for in camera inspection" even though state law deemed the records privileged.) A "state statute must yield where the need for the information... outweighs the benefits that would be derived by the Parole Board in withholding the information." *Bogard v. Cook*, 60 F.R.D. 508,510 (N.D. Mississippi 1973). Thus, this Court should give little deference to New York Executive Law § 259-k when determining Mr. Raymond's pending motion to quash.

Subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure "are subject to the general relevance standard applicable to discovery under Fed.R.Civ. 26(b)(1)." *During v. City University of New York*, 2006 WL 2192843, *2 (S.D.N.Y. 2006). "The Second Circuit has recognized that Rule 26 relevance is an obviously broad rule that is liberally construed." *During*, at *2. "The scope of discovery under the Federal Rules of Civil Procedure is broad." *Mostafa v. Axelrod*, 1993 WL 85738 (N.D.N.Y. 1993) (ordering the disclosure of privileged health information because the state-created privilege was in applicable in a case brought pursuant to § 1983).

Significantly, discovery is relevant when "there is any possibility that the information sought may be relevant to the subject matter of the action." *Westhemeco Ltd. v. New Hampshire Insurance Co.*, 82 F.R.D. 702, 709 (S.D.N.Y. 1979). Relevant information includes information that can be used to impeach a witness such as Mr. Raymond in this case. Indeed, a "cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the

4177778, 2, 066742.0001

witness is to introduce evidence of a prior criminal conviction of that witness." *Davis v. State of Alaska*, 415 U.S. 308, 316 (1974).

In this case, it is likely that Mr. Raymond's parole file contains information that can be used to impeach Mr. Raymond's credibility. For instance, we are now aware that since his release from DOCCS' custody in February 2020, Mr. Raymond has been involved in at least four incidents involving local police. On July 4, 2020, it appears that Mr. Raymond, before fleeing the scene, physically attacked his wife Michelle Raymond while under the influence of a narcotic by grabbing her by the neck, throwing her to the ground and throwing needles at her. (*See* Exhibit B to the Mackey Declaration.) Mr. Raymond has been charged with the following offenses related to the attack: (i) criminal obstruction; (ii) criminal possession of a controlled substance; and (iii) harassment second degree. *Id.*

Then, on August 25, 2020, police were called to Kenmore Mercy Hospital because Mr. Raymond became belligerent and caused a disturbance at the hospital before fleeing the scene. (*See* Exhibit C to the Mackey Declaration.) Furthermore, on January 30, 2021, Mr. Raymond threatened to harm his wife resulting in a call made to the Buffalo Police. (*See* Exhibit D to the Mackey Declaration.) Finally, Mr. Raymond testified during his deposition that since being released from DOCCS' custody, he has been arrested for attempted third degree burglary, criminal mischief and petty larceny. (*See* pp. 59-69 to Exhibit E to the Mackey Declaration.) It appears the arrest is related to criminal activity that occurred in Amherst, New York – the Amherst Police Department refused to release any records related to the arrest in response to a FOIL request served upon it because the investigation is on-going. (*See* Exhibit F to the Mackey Declaration.)

Since Mr. Raymond has been very active in breaking the law since being released from custody in February 2020, it is probable that his parole file includes information related to his

4177778, 2, 066742.0001

criminal activity and related arrests, and such information can be used to impeach Mr. Raymond and challenge his trustworthiness and credibility at trial. Moreover, Defendants could also use the information related to the arrests, and any information Mr. Raymond shared with his parole officer, to challenge Mr. Raymond's claim that his alleged injuries are debilitating – indeed, Mr. Raymond's injuries cannot be as serious as he claims if he is participating in strenuous activities that include physically attacking his wife, attempting burglary and fleeing scenes. Such information may also be of interest to the Defendants' expert witnesses who will be evaluating the injuries allegedly sustained by Mr. Raymond.

Mr. Raymond also testified during his deposition that his injuries have caused him to stop working and to go on medical leave. (*See* pp. 24-28 and 42 to Exhibit E to the Mackey Declaration.) Such claim is now questionable because of the various arrests mentioned above. Indeed, rather than having to go on medical leave, Mr. Raymond may not be employable because of his recent criminal activity. Such information may be present in Mr. Raymond's parole file and could be used by the Defendants to impeach Mr. Raymond's deposition testimony.

Finally, it is likely that Mr. Raymond's parole file includes false information that he has provided to his parole officer – false information that can be used to impeach Mr. Raymond. It is likely that Mr. Raymond has provided false information to his parole officer because it appears that Mr. Raymond has been making false statements after being released by DOCCS.

For instance, although Mr. Raymond has been convicted for numerous felonies[2], in the employment application he signed and submitted to K&S Contractor Supply, Inc. dated March 30, 2020, Mr. Raymond falsely stated that his only criminal conviction was for driving while intoxicated. (*See* Exhibit I to the Mackey Declaration.) Also, although Mr. Raymond was

---

[2] In 2008, Mr. Raymond was convicted for second degree burglary and second degree attempted burglary, and in 2013, Mr. Raymond was convicted for third degree burglary. (*See* Exhibits G and H to the Mackey Declaration.)

4177778, 2, 066742.0001

incarcerated from 2015 to 2020, he falsely stated in the employment application that he was employed at all times between 2010 to the present. *Id.*

Mr. Raymond also lied under penalty of perjury while submitting employment information. On March 19, 2020, within weeks of being released from DOCCS' custody, Mr. Raymond prepared and signed a federal tax form titled Pre-Screening Notice and Certification Request for the Work Opportunity Credit. (*See* Exhibit J to the Mackey Declaration.) Mr. Raymond signed the form, under penalty of perjury, falsely claiming that he had not been released from prison for a felony within the year preceding March 19, 2020. Indeed, although Mr. Raymond was released from prison in February 2020, he failed to check the box on line 2 of the form he signed on March 19, 2020, which provides "[d]uring the past year, I was convicted of a felony or released from prison for a felony." *Id.*

It is also evident that since his release, Mr. Raymond has been using illegal drugs. (*See* Exhibit B to the Mackey Declaration.) In the event Mr. Raymond has denied drug use during his visits with his parole officer (a DOCCS employee), any documents identifying his false denials would be relevant in this case as they could be used to impeach Mr. Raymond.

In light of the above, it is evident that Mr. Raymond's parole file likely includes relevant information that could be used to challenge his trustworthiness and credibility. As such, Defendants should not be denied access to the file. It should also be noted that at no time has the Board of Parole contacted our office to inform us that it is objecting to producing the records requested in the Subpoena. Thus, it appears that the Board of Parole, despite New York Executive Law § 259-k, is fully prepared to produce Mr. Raymond's parole file in the event this Court denies the pending motion to quash.

4177778, 2, 066742.0001

## CONCLUSION

The Defendants respectfully request that this Court enter an Order: (i) denying Mr. Raymond's motion to quash in its entirety; and (ii) granting such other and further relief it deems just and appropriate in the Defendants' favor.

Dated: May 10, 2021
      Buffalo, New York

                    Respectfully submitted,

                    LIPSITZ GREEN SCIME CAMBRIA LLP
                    *Attorneys for Defendants Mitchell, Thomas, Harte, Phillips, Giancola, Graham, and Geer.*

                    By:     */s/ Patrick J. Mackey*
                             Barry N. Covert, Esq.
                             Diane M. Perri Roberts, Esq.
                             Patrick J. Mackey, Esq.
                             42 Delaware Avenue, Suite 120
                             Buffalo, New York 14202
                             (716) 849-1333

4177778, 2, 066742.0001

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, I electronically filed the foregoing **Memorandum of Law in Opposition to Plaintiff's Motion to Quash Subpoena Served Upon the New York State Board of Parole** dated May 10, 2021, on behalf of Defendants Troy Mitchell, Charles Thomas, Thomas Harte, Thomas Phillips, Thomas Giancola, Harold Graham and Deborah A. Geer, M.D., with the Clerk of the Northern District of New York using its CM/ECF filing system and the document was electronically served upon the following counsels of record:

| | |
|---|---|
| Katherine R. Rosenfeld, Esq. | krosenfeld@ecbalaw.com |
| Emma L. Freeman, Esq. | efreeman@ecbalaw.com |
| Marissa Benavides, Esq. | mbenavides@ecbalaw.com |
| Cheryl Myers Buth, Esq. | cmbuth@mblg.us |
| Laurie A. Baker, Esq. | labaker@mblg.us |
| Barry N. Covert, Esq. | bcovert@lglaw.com |
| Diane M. Perri Roberts, Esq. | droberts@lglaw.com |

*/s/ Patrick J. Mackey*

Patrick J. Mackey, Esq.