UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------x
MATTHEW RAYMOND,

                Plaintiff,

vs.                             9:18-cv-1467

TROY MITCHELL, et al.,

                Defendants.

--------------------------------------------------x

Transcript of *Telephone Conference*

held on June 16, 2021

the HONORABLE ANDREW T. BAXTER

United States Magistrate Judge, Presiding

<u>APPEARANCES</u> (by telephone)

For Plaintiff:    EMERY CELLI BRINCKERHOFF LAW FIRM
                   600 Fifth Ave.
                   New York, New York 10020
                      BY:  EMMA LERNER FREEMAN, ESQ.
                            KATHERINE R. ROSENFELD, ESQ.

For Defendants:   LIPSITZ GREEN SCIME CAMBRIA LLP
(Auburn CF)      42 Delaware Avenue
                   Buffalo, New York 14202
                      BY:  PATRICK MACKEY, ESQ.

For Defendant:    MYERS BUTH LAW GROUP
(Hoppins)        21 Princeton Place
                   Orchard Park, New York 14127
                      BY:  LAURIE A. BAKER, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1           (10:30 a.m.)

2           THE COURT:  Good morning.  This is Raymond versus

3   Mitchell, 9:18-cv-1467.  Can I have the appearances for

4   plaintiff, please?

5           MS. FREEMAN:  Good morning, Judge Baxter.  This is

6   Emma Freeman from Emery Celli Brinckerhoff Abady Ward &

7   Maazel for plaintiff Matthew Raymond, and I believe that I'm

8   joined by my colleague Katie Rosenfeld.

9           MS. ROSENFELD:  Yes, good morning.

10           THE COURT:  Good morning.  For the Auburn

11   Correctional Facility defendants?

12           MR. MACKEY:  Good morning, Your Honor.  Patrick

13   Mackey on behalf of defendants Mitchell, Thomas, Harte,

14   Phillips, Giancola, Graham and Geer.

15           THE COURT:  And do we have counsel for defendant

16   Hoppins on the line?

17           MS. BAKER:  Yes, we do, Judge.  Laurie Baker for

18   defendant Hoppins.

19           THE COURT:  So the plaintiff moved to quash a

20   defense subpoena directed to the New York State Board of

21   Parole for the plaintiff's parole records, that is docket

22   number 115.  The defendants have opposed the motion to quash

23   at docket number 122.

24           I am prepared to decide that today.  I don't know

25   if the parties feel like they need any supplemental argument

1    beyond the papers that you submitted.  Start with the

2    plaintiff.

3              MS. FREEMAN:  Good morning, Your Honor.  I would

4    just like to say a few things briefly with your leave.

5              THE COURT:  Just let me know who's speaking,

6    please.

7              MS. FREEMAN:  This is Emma Freeman for the

8    plaintiff.

9              THE COURT:  Okay.

10             MS. FREEMAN:  There are two key issues on this

11   motion.  One is the question of the applicability of

12   Executive Law 259-k, which under New York State law creates a

13   confidentiality privilege that shields the parole records

14   which defendants are seeking from disclosure.  And the second

15   question under Rule 26 is whether the parole records

16   notwithstanding any privilege are relevant and discoverable

17   and proper for disclosure to the defendants in this case from

18   the Parole Board.

19             On the first point, the brief that was submitted by

20   the defendants seems to imply that Mr. Raymond doesn't have

21   standing because there is no federal parole confidentiality

22   privilege.  And that is simply not the law.  It's not federal

23   law; it's certainly not the law in the Second Circuit and in

24   the Northern District of New York.  A number of cases which

25   we cited in the footnote to our brief make it very clear that

1    all that is needed to have standing to quash a third-party

2    subpoena is a claim of some personal right or privilege with

3    respect to the documents sought.

4           The documents we're talking about are

5    Mr. Raymond's, they're his parole file.  And the request,

6    which is quite overbroad, which I'll turn to in a moment, is

7    for his entire parole file from all of time related to any

8    offenses or alleged offenses with no limitations whatsoever.

9    If Mr. Raymond doesn't have a claim of some personal right to

10   those documents, I'm not sure what documents he would have

11   standing to seek to quash.  There is no relationship between

12   the existence of a federal privilege and the standing to

13   quash the subpoena which is uncontroverted under the relevant

14   case law.

15          As a second matter, the fact that there is no

16   federal privilege for parole records confidentiality has no

17   bearing on the Court's decision on the motion.  It's

18   well-established both by the Second Circuit and the Northern

19   District that there is some deference owed to state law

20   privileges in federal matters like this, and the language is

21   that such state law privileges are owed serious

22   consideration.

23          And, in fact, the Northern District in a 2017

24   decision, *Burdick versus Town of Schroeppel*, the citation I'm

25   happy to provide, this Court itself acknowledged Section

1   259-k and held that the disclosure of a plaintiff's medical

2   records which were contained in its parole file were

3   presumptively invalid on the basis of the state law

4   privilege.  And this Court should reach the same conclusion

5   here.  There are heightened privacy interests at play where

6   parole records are at issue, and that's particularly the case

7   where as here the records sought don't have any relevance.

8            So moving to that second point, the Court will, as

9   you're aware, Judge, engage in a balancing test to determine

10  whether the weight to be afforded a state law privilege

11  outweighs the alleged need for the documents.  And in this

12  case the scale heavily weighs against disclosure and in favor

13  of quashing the subpoena.

14           Our firm has been practicing in this area for many

15  years and in no federal excessive force civil rights case

16  that we've ever seen has a plaintiff's parole file been

17  deemed relevant and discoverable.  And it's telling that in

18  Mr. Mackey's opposition he doesn't cite any federal civil

19  rights, much less excessive force cases like this one, where

20  the parole file was deemed relevant and discoverable.

21           So for that reason, Your Honor, we see the subpoena

22  as a fishing expedition, and that it's based largely on,

23  according to Mr. Mackey's motion, not prior convictions but

24  allegations of criminal misconduct that post date the 2016

25  assault which this case is all about.  That there might be

1   some marginal impeachment value to materials that he imagined

2   could be found in the parole file is simply not enough to

3   outweigh Mr. Raymond's privacy interest, his personal right

4   to the documents, and the weight of the state law privilege,

5   which we submit should weigh heavily here.  None of the cases

6   that Mr. Mackey has submitted on behalf of defendants are on

7   point.  Some of them are state law criminal cases.  The

8   disclosure of parole records there is far afield from what it

9   would mean for defendant to have unfettered access to the

10  files in this case, which is about defendants and their

11  assault on Mr. Raymond, who now is said to have a second

12  surgery on his bladder necessitated by the sequela of that

13  assault.

14          Your Honor, other than that, unless you have

15  questions for me, I'm happy to rest on the papers, and I'll

16  just conclude by saying again that the request is profoundly

17  overbroad and if the Court is inclined to grant any part of

18  it, I would like to be given the opportunity to speak about

19  limitations on the request, which should not stand as it was

20  submitted.  Thank you.

21          THE COURT:  Mr. Mackey.

22          MR. MACKEY:  Good morning, Your Honor.  Thanks,

23  Your Honor.

24          Just briefly, Your Honor, I'm just going to touch

25  upon a couple of things that Ms. Freeman mentioned rather

1   than really going into what I've already argued in our

2   opposition papers.

3          One thing I just want to clarify, we're not looking

4   for the entire history of Mr. Raymond's parole file.  I

5   believe he has had two different occasions where he was

6   incarcerated, and we're not interested in his first parole

7   which came after his first time he was incarcerated; we're

8   just interested in his most recent parole, which I believe

9   started in February of 2020.  So we're really just looking

10  for documents for the last year and a half related to his

11  most recent stint on parole.  So that's just to clarify

12  exactly what we're looking for.  So we're not looking for an

13  overbroad history of his parole, just the most recent parole.

14         Ms. Freeman mentioned the cases they cited in their

15  footnote related to standing, and when I reviewed those

16  cases, I did see that two of them, *Meyer Corp. U.S. versus*

17  *Alfay Designs*, and *Samad Brothers versus Bokara Rug Company*,

18  both of those the Court found that there was no standing.  So

19  the cases the plaintiff is even citing favors the position

20  that they don't have standing to bring the motion that they

21  brought.  And the third case in their footnotes, *Solow versus*

22  *Conseco*, had dealt with banking records, had nothing to do

23  with parole records.

24         So I think the lack of case law that supports their

25  standing argument kind of helps my position which states that

8

1   it's a state privilege, it really doesn't apply to this case,

2   which is strictly, or for the most part, a question of

3   federal law, and that there really isn't any standing in this

4   case because there is no privilege or federally based statute

5   of law protecting state parole records, which is what we're

6   fighting over today.

7           Also with respect to actually the relevance of the

8   documents, we did cite -- and I think it's important that we

9   actually cited state law rather than federal law in this

10  particular matter because if we have state courts allowing

11  the disclosure of parole records when the executive law is

12  actually applicable to that particular matter, it shows that

13  the state courts even are willing to allow parole records to

14  be released if they find that their relevance is present in

15  that particular case.

16          And the one case I think that's most important is

17  the *People versus Price* case that we cited, and in that

18  particular case the Court allowed probation records to be

19  disclosed strictly for impeachment purposes.  They felt that

20  the parties seeking the probation records could have used

21  those records to impeach the party in that case.  And I think

22  that's a major part of our argument with respect to relevance

23  here, Your Honor, is that there appears to be several

24  incidences where Mr. Raymond has provided false statements

25  since being released; he has done it in his employment

1    applications, he did it under the penalty of perjury on a

2    federal tax form.  And if any of this information is also

3    being disclosed with the parole officer and is part of the

4    parole records, or any similar information is being provided

5    to his parole officer and is part of the parole records, it

6    could definitely be used for impeachment purposes.  He is

7    lying under oath and he has already lied under penalty of

8    perjury on this one document, and then he is lying on

9    employment applications.  And if there is anything similar in

10   the records of the Parole Board, I think that would be quite

11   relevant in this case for impeachment-wise.

12        Also even beyond impeachment purposes, if there is

13   anything in the parole records related to his activities that

14   essentially contradict what he is claiming.  He is claiming

15   his injuries are debilitating and he can't work.  Well, there

16   may be information in the parole records as to why he is not

17   working.  It may be because of these recent arrests and it

18   has nothing to do with his injuries or alleged injuries.

19        And so there are multiple reasons why we think that

20   the parole records could be of interest to defense in this

21   case, as I just laid out it's for impeachment purposes and

22   also there may be information in there that's contradicting

23   what he is stating about his injuries.  He is stating he

24   can't work because of his injuries.  Well, maybe he can't

25   work because of recent criminal activity and that would be

1    included in his parole record.

2           So, to sum it up, Your Honor, there is history of

3    cases of courts allowing parole or probation records to be

4    released for impeachment purposes and other reasons.  The

5    other case we cited related to that was the *Maggio* case, and

6    I think in this particular matter where we have evidence of

7    Mr. Raymond engaging in nefarious actions after being

8    released in February 2020, it kind of highlights the need to

9    see what the Parole Board has in its hands to see if there is

10   more information there that could be helpful to the defense

11   in this case.

12          And the last thing I'll add, and this was a brief

13   statement in my papers, is that at no instance has the Parole

14   Board ever come to us and say, hey, we cannot give you these

15   records, these are privileged.  In the communications I've

16   had with the Parole Board, they were looking or basically

17   just coordinating with us to have those records produced,

18   which obviously was put to a hold once Your Honor said to

19   contact the Parole Board and tell them don't produce anything

20   yet until this motion, which we did.  But at no time has the

21   Parole Board advised us that they have information that they

22   can't turn over, which I think is telling as well.

23          Thanks, Your Honor.

24          MS. FREEMAN:  Your Honor, if I could respond

25   briefly on three points?

1          THE COURT:  Briefly.

2          MS. FREEMAN:  First, Your Honor, with respect to

3    standing, I just want to note that Mr. Mackey alludes to

4    cases that he has cited, but the two cases cited with respect

5    to standing in his words, *Koster* and *In re Grand Jury*

6    *Subpoena*, don't address standing, standing in either

7    decision, those just concern the existence of federal

8    privilege or lack thereof.

9          So I would submit that the Court should not

10   consider those cases in making a standing determination given

11   the case law that we cited in our footnote which, regardless

12   of the outcome on the facts, supports the clear principle

13   that where there is a personal interest in the documents,

14   which there is here, standing is established.

15         Second, Your Honor, as to *People versus Price*, that

16   case has nothing to do with this, and as a matter of fact, it

17   was a state criminal trial, and the parole records sought

18   were directly relevant to the identification of the defendant

19   in that suit.  There was a particularized need for some

20   access to the parole file that is very far afield from what's

21   going on here, which is a fishing expedition for supposed

22   impeachment material in an excessive force case.

23         And on that point, Your Honor, finally, whatever

24   impeachment value these materials supposedly have is too far

25   afield from the facts of this case to weigh heavily in the

1   Court's analysis.  This is a case about a man who was

2   viciously assaulted and who is suffering from serious urinary

3   and bladder injuries years later as a result.  Mr. Mackey is

4   citing in his papers the alleged failure to check a

5   particular box on an employment form.  Those two things are

6   not sufficiently related to one another to make impeachment

7   on that point relevant and ultimately appropriate for

8   consideration at trial.  Thanks, Your Honor.

9            THE COURT:  Let me start by addressing standing.

10  The defense counsel argues that plaintiff lacks standing to

11  move to quash the third-party subpoena because he cannot

12  assert a federal privilege that would block the subpoena.  I

13  agree with Ms. Freeman that that position is not consistent

14  with the case law and standing in this circuit.

15           The law in the Second Circuit is cogently

16  summarized in *Hughes versus Twenty-First Century Fox, Inc.*,

17  327 F.R.D. 55, 57 (S.D.N.Y. 2018).  I'm going to quote that

18  but leave out the citations that appear in *Hughes*.  Parties

19  generally do not have standing to object to subpoenas issued

20  to non-party witnesses.  However, "exceptions are made for

21  parties who have a claim of some personal right or privilege

22  with regard to the documents sought."  "Examples of such

23  personal rights or privileges include the personal privacy

24  right and privilege with respect to information contained in

25  psychiatric and mental health records, claims of

1   attorney-client privilege, and other privacy interests,

2   including those relating to salary information and personnel

3   records."

4           So, in *Hughes*, the Court found that the third-party

5   subpoena seeking plaintiff's sexual history with other men

6   implicated a personal privacy interest that gave the

7   plaintiff standing to move to quash.  The subpoenaed

8   information clearly did not implicate a federal privilege,

9   which is also true for some of the other categories of

10  privacy interests that *Hughes* recognized as providing for

11  standing.

12          In *Solow versus Conseco, Inc.*, a Southern District

13  of New York case from January 18, 2008, reported at 2008 WL

14  190340, at page 3 to 4, the Court stated, and I'm quoting

15  again, "The Advisory Committee Notes to the 1991 amendments

16  of Rule 45 observe that clause c(3)(B)(I) authorized the

17  court to quash, modify or condition the subpoena to protect

18  the person subject to or affected by the subpoena from

19  unnecessary or unduly harmful disclosures of confidential

20  information."  Thus, courts have recognized that parties with

21  a privacy interest in subpoenaed documents have standing to

22  oppose the subpoena.

23          While *Solow* involved a subpoena for bank records,

24  which would not be protected by a federal privilege, the

25  Court noted that privacy interests in other types of

1   documents were sufficient to provide standing to move to

2   quash a third-party subpoena.  Quoting again from *Solow*, "The

3   inquiry courts apply is whether the information itself is

4   private, confidential, privileged, or highly sensitive, and

5   not the form that the records take."

6         While there doesn't seem to be much federal case

7   law in this circuit relating to subpoenas for parole records,

8   it is clear to this Court that a person's parole records

9   implicate a personal privacy interest that provides standing.

10   New York Executive Law Section 259-k, quoting now, "provides

11   a clear legislative intent to establish and maintain the

12   confidentiality of parole records."  That's a quote from

13   *Collins versus New York State Division of Parole,* a 3d

14   Department case reported at 251 A.D.2d 738, at 738 to 739.

15   Also the defense brief acknowledges federal regulations,

16   which also recognize the confidentiality of parole records.

17   Those are at 28 CFR, Section 2.88.

18         I'm also going to cite a couple of cases from other

19   districts which are not binding in this circuit but I think

20   are instructive.  The first is *Chavez versus the City of*

21   *Framington*, a District of New Mexico case from August 18,

22   2015, reported at 2015 WL 13659473, at page 2, which held

23   that, "Defendants concede plaintiff has standing to challenge

24   the third-party subpoena seeking his parole records in

25   connection with the civil rights action."

1       And I would also cite *Castellani versus City of*

2  *Atlantic City*, a District of New Jersey case from March 31,

3  2017, reported at 2017 WL 1201755, at page 2, which held

4  that, "A plaintiff in a civil rights action had standing to

5  move to quash a third-party subpoena seeking records relating

6  to his participation in a state pretrial intervention

7  program."

8       I'll now turn to the merits of the motion to quash.

9  Plaintiff seeks to quash the defendants' subpoena to the New

10 York State Parole Board in light of the recognition that such

11 records are confidential under New York Executive Law,

12 Section 259-k and the implementing regulations, 9 NYCRR

13 8000.5, which preclude release, and I'm quoting from the reg

14 now, "except by the Chairman upon good cause shown."

15      The case law cited by the defendant makes clear

16 that in a 1983 civil rights action, even when there are also

17 state law claims, federal common law on privilege, not state

18 law, applies.  For example, *Koster versus Chase Manhattan*

19 *Bank* (S.D.N.Y. September 5, 1984) reported at 1984 WL 833, at

20 page 3.  That does not mean, however, that state law

21 privileges are irrelevant in discovery matters in federal

22 civil actions.

23      As stated in *Daniels versus City of New York*

24 (S.D.N.Y. March 8, 2001) reported at 2001 WL 228091, at

25 page 1, I'm quoting now, "State statutory privileges must be

construed narrowly and must yield when outweighed by a
federal interest in presenting relevant information to a
trier of fact."  Nonetheless, "the policies underlying state
evidentiary privileges must still be given serious
consideration even if they are not determinative.  Thus, as a
matter of comity, federal courts must balance the deference
to be accorded state law privileges with the need for the
information sought to be protected."  And I've deleted -- or,
not cited the cases that were cited in that quote in the
*Daniels* case.

        To the same effect is *Mercado versus Division of
New York State Police* (S.D.N.Y. 1998) reported at 989
F.Supp.2d 521, at 522 to 23, and I'm quoting again, "Federal
common law provides for some consideration of state law
privileges, since a strong policy of comity between state and
federal sovereignties impel federal courts to recognize state
privileges where this can be accomplished at no substantial
cost to federal substantive and procedural policies.  To
resolve discovery disputes of this kind, a federal court must
balance the plaintiff's interests in disclosure against the
state's legitimate concern of protecting the confidentiality
of the officers' personnel file from unnecessary intrusions."

        Although in a different context, that of a federal
habeas petitioner unsuccessfully seeking discovery of his own
parole records, a district court in this circuit indicated

1   that the petitioner would have to make a showing of good

2   cause to overcome the state law confidentiality protection

3   for parole documents under New York law.  That case is

4   *Rossney versus Travis* (S.D.N.Y. January 17, 2003) reported at

5   2003 WL 135692, at pages 12 to 14, which was in turn affirmed

6   by the Second Circuit in 2004 in a case reported at 93 F.

7   App'x 285.

8           So most of the case law involving the

9   discoverability of parole records relates to cases where the

10   actions of the Parole Board or the Commission was being

11   challenged.  There is little, if any, authority relevant to

12   our current situation where the defendants in a civil rights

13   action have made a blanket request for parole records of a

14   civil rights plaintiff pursuing claims unrelated to his

15   parole situation.

16           The closest federal civil rights case I found was

17   the District of New Mexico case I cited earlier, *Chavez*,

18   which I believe I cited in full, at pages 5 to 6, in which

19   the defense subpoenaed records from the New Mexico Department

20   of Corrections, which I'll refer to as the NMDC, as to which

21   both the NMDC and the plaintiff objected.  New Mexico, like

22   New York, had a statutory privilege with respect to certain

23   parole documents, which in New Mexico included presentence

24   reports, pre-parole reports, parole and probation supervision

25   history, and the New Mexico Probation and Parole Act, or the

1   PPA, is the relevant New Mexico statute.  And that's

2   reflected at page 2 in the *Chavez* case.

3            With respect to presentence reports, the Court

4   noted that it was unaware of any reason why state reports

5   should be considered less confidential than corresponding

6   federal reports and found that there was no compelling

7   reasons to order the disclosure of state presentence reports

8   because the defendants had other avenues to obtain the

9   information.

10            Quoting now from *Chavez* at pages 5 and 6, "With

11   regard to pre-parole reports and parole supervision

12   histories, a state statutory provision generally requiring

13   the confidentiality of documents is insufficient to prevent

14   their disclosure during a federal action.  Nonetheless, the

15   Court may place the underlying reasons for the state statute

16   on the scale when balancing the competing interests at

17   stake."

18            Skipping ahead in my quote from *Chavez*, "Pre-parole

19   reports and parole supervision histories are prepared in

20   criminal cases to assist the Court in making difficult

21   decisions about the fate of a criminal defendant.  To be

22   effective, the reports must contain frank assessments and

23   sensitive information.  Routinely, subjecting these reports

24   to civil discovery could have a chilling effect on the

25   information contained in these reports.  It is at least

1    partly for this reason that the New Mexico statute, the PPA,

2    protects their confidentiality for the purposes of state law.

3    While the Court again notes that the protection afforded by

4    the PPA does not require this Court to prevent the disclosure

5    of these documents, the Court finds that the NMDC's interests

6    in keeping these reports confidential easily outweighs the

7    defendant's need for the information in the reports.

8    Therefore, the Court will not order NMDC to produce them.

9           The other case I cited, *Castellani versus City of*

10   *Atlantic City*, applied similar reasoning and reached a

11   similar result in the context of a motion, filed by a

12   plaintiff in a civil rights case, to quash a defense subpoena

13   directed to the director of a court pretrial intervention

14   program for records relating to plaintiff's participation in

15   that program.

16          New Jersey law protected plaintiff's Pretrial

17   Intervention File from disclosure in civil matters, as the

18   *Castellani* case notes at page 3.  That court acknowledged

19   that state evidentiary privileges are, quoting now, "strongly

20   disfavored in federal practice and must be narrowly drawn,"

21   but noted that the Court may in the interest of comity

22   recognize a state privilege, "to the extent that doing so

23   will not impose a substantial cost on federal policies."

24          And I would note that standard is very similar to

25   the standard reflected in some Second Circuit case law I

cited earlier, which although it deals with different state
law privileges.  The Court found in *Castellani* that, and I'm
quoting again, "recognizing a privilege with respect to state
pretrial diversion records is consistent with federal policy
as it relates to federal pretrial diversion records."  And
that's also from *Castellani* at page 6.

The *Castellani* court stated at page 4, I'm quoting
at length now, "The Court recognizes that statements made by
plaintiff and other witnesses to the incident giving rise to
this litigation, which may have been included in plaintiff's
PTI file, are probative and relevant.  However, plaintiff's
PTI records are not the only source of this information and
the defendants acknowledge as much as they seek the
information for impeachment purposes, having already had
ample opportunity to develop the factual record and depose
plaintiff and numerous witnesses.  Thus, the Court finds that
the recognition of the state privilege in this case will not
detrimentally impact the federal interest of ensuring a
complete factual record."

The *Castellani* defendants argued that they were,
quoting again, "entitled to investigate a deponent's
credibility with other statements made regarding the incident
and plaintiff's conduct," and that the statements may lead to
additional witnesses that have yet to be identified."  But
the Court concluding that there was, quote, "no compelling

1  need for defendants to have statements in light of the

2  extensive discovery already conducted in this case."

3          So, based on the reasoning of these two cases,

4  which again are not binding in this circuit but which I find

5  persuasive, I'm going to quash the defense subpoena for

6  plaintiff's parole file.  Federal regulations provide for the

7  confidentiality of federal parole records, as New York

8  Executive Law 259-k and the implementing regulations do for

9  New York State parole records.

10          As in *Chavez* and *Castellani*, the existence of a

11  comparable federal privacy protection for parole or pretrial

12  diversion records, warranted the federal court to credit and

13  balance those interests of the state and the plaintiff

14  reflected in the state privacy laws.

15          The defense made an expansive request for the

16  plaintiff's entire parole file, although acknowledges now

17  that they're limiting it to his most recent period on parole,

18  but they have provided nothing beyond speculation as to how

19  the contents of that file would be relevant to the excessive

20  force incident on September 14th, 2016, when plaintiff was

21  confined by DOCCS and not on parole.

22          By contrast, in *Castellani*, the plaintiff was on

23  pretrial intervention based on the same incident that was the

24  basis for a civil rights suit, and the Court acknowledged

25  that there could be relevant information in the PTI file, but

1    quashed the subpoena anyway, because the defendants had other

2    ways to obtain similar information that were less intrusive

3    on the plaintiff's and the state's interest in maintaining

4    the confidentiality of the pretrial intervention records.

5         As in *Chavez* and *Castellani*, the defense in this

6    case has extensive information about plaintiff's criminal

7    history and other incidents of apparent misconduct or

8    criminal activity that led to police intervention, which the

9    defendants also seek through the subpoena to the Board of

10   Parole.

11        The defense in this case argues that plaintiff's

12   parole files could provide general credibility information,

13   not related to the excessive force incident that is subject

14   to plaintiff's civil rights action; e.g., evidence that,

15   quoting from defendants' papers now, "He has been very active

16   in breaking the law since his release from custody in

17   February 2020," or evidence, quoting again, "of false

18   information that he has provided to his parole officer,"

19   highlights the speculative nature of their subpoena here.   I

20   was quoting from the defendants' brief at pages 9 to 11,

21   docket number 122-11.

22        Again, the defense clearly already has access to

23   much of this information and is otherwise fishing for

24   additional credibility information, with no regard for the

25   interest of the state and the plaintiff in the sensitivity

1    and confidentiality of the information in that parole file.

2            And I would cite a couple further cases on that

3    point; *People versus Casanova*, a Supreme Court case from

4    Bronx County from 1979, reported at 422 N.Y.S.2d 307, which

5    held, and I'm quoting, "Mere speculation and surmise that the

6    parole file contains some facts with which to impeach the

7    witness is insufficient to compel disclosure of all or part

8    of the parole records.  *United States versus Fernandes*, a

9    Western District of New York case from 2015, reported at 115

10   F.Supp 3d 375, at 380, which held, "Defendant failed to offer

11   any factual basis for disclosure of the PSI of the potential

12   witness against him."  Quoting now from *Fernandes*, "Instead,

13   defendant's request is general and unspecific, amounting to

14   nothing more than a fishing expedition in the hopes that the

15   disclosure of the PSIs may ultimately lead to the disclosure

16   of information that could be used on cross-examination for

17   impeachment."

18           In sum, the defendants are seeking the parole

19   records that bear no relation to the facts underlying the

20   incident which is the basis for plaintiff's civil rights

21   claims.  They are fishing for general impeachment material

22   from very sensitive parole records, although they have

23   already obtained extensive discovery of other sources of

24   comparable impeachment information.

25           I am not persuaded that the defendants have

1   established the relevance of or the need for the subpoenaed

2   information to an extent that outbalances the privacy

3   interests of the plaintiff, as reflected in the New York

4   Executive Law Section 259-k and the implementing regulations.

5            Accordingly, I'm going to grant plaintiff's motion

6   and quash the subpoena to the New York State Division of

7   Parole.

8            So, I'm going to enter a very brief text order

9   confirming my ruling, which either side -- I guess I'm going

10  to direct you, Mr. Mackey, to advise the Parole Board of that

11  ruling, but I will rely on the record I've made during this

12  stenographically recorded conference for the underlying

13  reasons.

14           I am hesitant to ask, but is there anything else in

15  this case that requires my attention at this time?

16           MS. FREEMAN:  Not from plaintiff, Your Honor.

17           MS. BAKER:  Not from me.

18           MR. MACKEY:  Not from the defendants either, Your

19  Honor.

20           THE COURT:  Ms. Baker, I apologize, I didn't ask

21  you to chime in, but I didn't really think you had a dog in

22  this fight.

23           MS. BAKER:  I don't.  Just sitting here quietly.

24           THE COURT:  Everybody take care.  If anything else

25  comes up that requires my attention, let me know, because I

1   don't think we have any further conferences or anything

2   further scheduled.  Take care.

3             (Court adjourned at 11:07.)

4             *            *            *

5

6             C E R T I F I C A T I O N

7

8             I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

9   Realtime Court Reporter, in and for the United States

10  District Court for the Northern District of New York,

11  do hereby certify that pursuant to Section 753, Title 28,

12  United States Code, that the foregoing is a true and correct

13  transcript of the stenographically reported proceedings held

14  in the above-entitled matter and that the transcript page

15  format is in conformance with the regulations of the

16  Judicial Conference of the United States.

17

18

19

20             _____
                        *Eileen McDonough*

21             EILEEN MCDONOUGH, RPR, CRR
               Federal Official Court Reporter

22

23

24

25