UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MATTHEW RAYMOND,

      Plaintiff,

v.

TROY MITCHELL, Lieutenant at Auburn Correctional Facility, CHARLES THOMAS, Correction Officer at Auburn Correctional Facility, THOMAS HARTE, Sergeant at Auburn Correctional Facility, THOMAS PHILLIPS, Correction Officer at Auburn Correctional Facility, THOMAS GIANCOLA, Correction Officer at Auburn Correctional Facility, HAROLD D. GRAHAM, Former Superintendent of Auburn Correctional Facility, BRIAN BAUERSFELD, Correction Hearing Officer at Auburn Correctional Facility, BRIAN O'HORA, Correction Officer at Auburn Correctional Facility, AIMEE HOPPINS, R.N., Dr. DEBORAH GEER, and "JOHN DOE", Correction Officer at Auburn Correctional Facility,

      Defendants.

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**

No. 18-cv-01467

---

      Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of Civil Procedure for the United States District Court for the Northern District of New York, Defendants, Troy Mitchell, Charles Thomas, Thomas Harte, Thomas Phillips and Thomas Giancola (collectively, the "Defendants"), state that the following material facts are not in dispute:

      1.    On the date of the alleged incident, September 14, 2016, Plaintiff was an inmate incarcerated at Auburn Correctional Facility. (*See* ¶ 2 to the Amended Complaint, Exhibit A to the Attorney Declaration of Patrick J. Mackey dated July 27, 2023 (the "Mackey Declaration").)

      2.    On the date of the alleged incident, each Defendant was a DOCCS employee stationed at Auburn Correctional Facility. (*See* ¶¶ 10-14 to Exhibit A to the Mackey Declaration.)

3.   The Plaintiff has suffered epileptic seizures since 2012. The Plaintiff started experiencing seizures after being hit in the head by an I-Beam while working on a construction site. The Plaintiff suffered head and brain injuries, including bleeding on the brain, as a result of being hit by the I-Beam. (*See* pp. 128-133 to Plaintiff's deposition transcript, Exhibit G to the Mackey Declaration.)

4.   The Plaintiff alleges that on September 14, 2016, he was subjected to use of excessive physical force at the hands of the Defendants when returning to Auburn Correctional Facility from Auburn Community Hospital. (*See* ¶¶ 34-53 to Exhibit A to the Mackey Declaration.)

5.   Specifically, Plaintiff alleges that upon returning to Auburn Correctional Facility on September 14, 2016, he was taken to the facility's "emergency treatment room" where Defendant Mitchell waterboarded him, and Defendant Mitchell: (i) punched the Plaintiff in the face, neck and chest; (ii) grabbed and twisted the Plaintiff's testicles and penis; and (iii) punched and used his baton on the Plaintiff's groin. (*See* ¶¶ 34-53 to Exhibit A to the Mackey Declaration.)

6.   Plaintiff further alleges that the remaining Defendants (Defendants Thomas, Phillips, Giancola and Harte) "stood by and observed this assault, and did nothing to intervene or stop the assault." (*See* ¶ 41 to Exhibit A to the Mackey Declaration.)

7.   Defendants deny that any force was used on the Plaintiff on September 14, 2016, and they deny all of the Plaintiff's allegations of use of excessive force. (*See* Exhibit B to Mackey Declaration.)

8.   Defendants deny performing any actions on September 14, 2016, that caused bodily injury to the Plaintiff resulting in the Plaintiff suffering a permanent injury. (*See* ¶¶ 139-143 and ¶¶ 159-166 to Exhibit B to the Mackey Declaration.)

9. Plaintiff was returning to Auburn Correctional Facility from Auburn Community Hospital on September 14, 2016, because earlier in the day, he had experienced a seizure. (*See* ¶ 26 to Exhibit A the Mackey Declaration.)

10. One day earlier, on September 13, 2016, Plaintiff experienced a seizure while at Auburn Correctional Facility, and during that seizure he fell and suffered injuries to his head and neck. (*See* ¶ 25 to Exhibit A, p. 148 to Exhibit G, Exhibit H, and Exhibit I to the Mackey Declaration.)

11. The Plaintiff alleges that the excessive force used on him by the Defendants on September 14, 2016, caused him to suffer a permanent injury – neurogenic bladder. (*See* Exhibits A, D and F to the Mackey Declaration.)

12. The Plaintiff's neurologist expert witness wrote in her report that a neurogenic bladder is a urinary bladder problem caused by an "injury to the central nervous system," and "traumatic brain injury is a well-established cause of neurogenic bladder." (*See* p. 13 to Exhibit D to the Mackey Declaration.)

13. In his report, the Defendants' neurologist expert witness stated that a determination that a person sustained a neurogenic bladder "requires a proper neurogenic diagnosis and a localization in the nervous system on which to base that claim." (*See* p. 5 to Exhibit J to the Mackey Declaration.) The Defendants' expert further stated in his report that "[n]eurogenic bladder caused by traumatic brain injury cannot exist by itself without other neurogenic findings." (*See* p. 5 to Exhibit J to the Mackey Declaration.)

14. The Plaintiff's neurologist expert witness wrote in her report that the Plaintiff's neurogenic bladder condition was caused by "traumatic brain injury" suffered by the Plaintiff on September 14, 2016. (*See* p. 13 to Exhibit D to the Mackey Declaration.)

15. The Plaintiff's urologist expert witness testified that the Plaintiff's urine retention problem was not caused by a stricture in the Plaintiff's urethra. A urethral stricture is scar tissue that can form in a person's urethra that may cause urination retention problems. (*See* pp. 37-40 to Exhibit E to the Mackey Declaration.)

16. The Plaintiff's neurologist expert witness testified that the Plaintiff's neurogenic bladder was not caused by any injury to the Plaintiff's neck or spinal cord. (*See* p. 151, lines 4-11, to Exhibit C to the Mackey Declaration.)

17. The Plaintiff's expert witnesses determined that the Plaintiff's neurogenic bladder condition was caused by an injury to the Plaintiff's brain. The Plaintiff's expert witnesses ruled out that the Plaintiff's neurogenic bladder condition was caused by a use of force on the Plaintiff's neck, chest, penis, testicles and groin.

18. The Plaintiff's urologist expert witness determined that medical imaging taken of the Plaintiff's brain, neck and spine after the alleged September 14, 2016, incident did not reveal any evidence of injuries or trauma to said parts of the Plaintiff's body. (*See* p. 4 to Exhibit F to the Mackey Declaration.)

19. The Plaintiff's neurologist expert witness admitted during her deposition that no medical imaging of the Plaintiff's brain exists which shows the brain injury that caused the Plaintiff to suffer a neurogenic bladder. (*See* p. 151, lines 12-23, to Exhibit C to the Mackey Declaration.) The expert testified that "[t]here was no abnormality on his imaging which is often consistent with a head injury…" (*See* p. 150, lines 12-22, to Exhibit C to the Mackey Declaration.)

20. The Plaintiff's urologist expert witness also admitted during his deposition that there is no imaging of the Plaintiff's brain that shows the injury that caused the Plaintiff's neurogenic bladder condition. (*See* p. 27, lines 15-23, to p. 28, lines 1-4, and p. 50, lines 19-23, to

Exhibit E to the Mackey Declaration.) The Plaintiff's expert also wrote in his report that the "imaging studies of [the Plaintiff's] brain did not reveal any obvious evidence of trauma…" (*See* p. 4 to Exhibit F to the Mackey Declaration.)

21. Since no physical evidence of trauma to the Plaintiff's brain exists, the Plaintiff's expert witnesses rely on the temporal proximity of the Defendants' alleged use of force and the subsequent onset of brain injury related symptoms to support their respective findings. The expert witnesses identified the following post-incident symptoms as evidence of brain injury: (i) headaches; (ii) difficulty concentrating; (iii) marked cognitive dysfunction; (iv) personality change; (v) sleep problems; and (vi) lightheadedness. (*See* p. 4 to Exhibit F and p. 14 to Exhibit D to the Mackey Declaration.)

22. In her report, the Plaintiff's neurologist expert witness did not provide facts to support her contention that prior to September 14, 2016, there is no "significant" history of headache, personality change, sleep problems and lightheadedness. (*See* p. 14 to Exhibit D to the Mackey Declaration.)

23. Contrary to the statement made by the Plaintiff's neurologist expert regarding the Plaintiff's past medical history, medical records from June 2014 (more than two years before the alleged September 14, 2016, incident) reveal that the Plaintiff: (i) had a clinical history of headaches; (ii) reported having trouble with his memory; and (iii) reported having a "headache above eyes." (*See* pp. 1-2 to Exhibit K to the Mackey Declaration.)

24. The Plaintiff's medical records from June 2014 also reveal that over two years before the alleged September 14, 2016, incident, the Plaintiff was concerned that "he has been unable to urinate regularly." (*See* p. 3 to Exhibit K to the Mackey Declaration.)

25. The Plaintiff's neurologist expert did not identify two post-incident symptoms mentioned by his urologist expert ("difficulty with concentration" and "marked cognitive dysfunction") as symptoms the Plaintiff did not experience prior to the alleged September 14, 2016, incident. (*See* Exhibit D to the Mackey Declaration.)

26. With respect to the "personality change" post-incident symptom identified in the expert report written by the Plaintiff's neurologist expert, the Plaintiff's expert did not consider that in 2015 and 2016, the Plaintiff spent time receiving treatment for depression. (*See* p. 7 to Exhibit D to the Mackey Declaration.)

27. The Plaintiff's urologist expert witness did not review any medical records dated prior to the September 14, 2016, alleged incident. The expert witness's report provides that all of the Plaintiff's medical records reviewed by him for his evaluation of the Plaintiff are dated after September 14, 2016. (*See* p. 1 to Exhibit F to the Mackey Declaration.)

28. When asked during his deposition if he reviewed any of the Plaintiff's medical records dated prior to September 14, 2016, the Plaintiff's urologist expert stated, "I don't know." (*See* p. 33, lines 4-11, to Exhibit E to the Mackey Declaration.)

29. The Plaintiff's urologist expert witness identified stroke and multiple sclerosis as potential causes of a neurogenic bladder. (*See* p. 3 to Exhibit F and p. 25 to Exhibit E to the Mackey Declaration.)

30. The Plaintiff's urologist expert witness did not exclude stroke and multiple sclerosis as a possible cause of the Plaintiff's neurogenic bladder condition. (*See* Exhibit F to the Mackey Declaration.)

31. The Plaintiff's urologist expert witness admitted during his deposition that the seizure induced fall that the Plaintiff experienced on September 13, 2016 (one day before the

alleged incident of September 14, 2016) could have caused the brain injury that the Plaintiff allegedly sustained, resulting in the Plaintiff acquiring a neurogenic bladder. (*See* p. 30, lines 11-23, to p. 31, lines 1-7, to Exhibit E to the Mackey Declaration.)

32.  Although the Plaintiff's urologist expert witness testified during his deposition that the fall the Plaintiff experienced on September 13, 2016, "wasn't anything severe," the fall was serious enough to require the Plaintiff to be taken to Auburn Community Hospital for observation on the same day as the fall, and serious enough for a CT scan to be taken of the Plaintiff's head. (*See* p. 30, lines 17-23, to Exhibit E to the Mackey Declaration, and Exhibits H and I to the Mackey Declaration.)

33.  The Plaintiff's medical records from Auburn Community Hospital dated September 13, 2016, provide that the Plaintiff complained of "neck pain and [headache]" when arriving at the hospital after experiencing the seizure induced fall. (*See* p. 2 to Exhibit I to the Mackey Declaration.)

34.  The Plaintiff's urologist expert witness did not write in his report that the fall the Plaintiff experienced on September 13, 2016, did not cause, or could not have caused, the brain injury allegedly sustained by the Plaintiff. (*See* Exhibit F to the Mackey Declaration.)

35.  The Plaintiff's urologist expert witness admitted during his deposition that he does not know much about the fall the Plaintiff experienced on September 13, 2016. (*See* p. 30, lines 11-23, to Exhibit E to the Mackey Declaration.)

36.  In her report, the Plaintiff's neurologist expert witness mentions that the Plaintiff experienced a fall on September 13, 2016, but in no portion of her report does the expert witness exclude the fall as a potential cause of the Plaintiff's alleged brain injury and resulting neurogenic bladder. (*See* p. 15 to Exhibit D to the Mackey Declaration.)

37. In her report, the Plaintiff's neurologist expert excludes the Plaintiff's 2012 brain injury and his subsequent seizures, as well as improper catheter care and drug use, as potential causes of the Plaintiff's brain injury and resulting neurogenic bladder; the expert, however, does not exclude in her report the September 13, 2016, fall as a potential cause of the Plaintiff's brain injury and resulting neurogenic bladder. (*See* p. 14 to Exhibit D to the Mackey Declaration.)

38. The Plaintiff's neurologist expert admitted during her deposition that she did not discuss with the Plaintiff the September 13, 2016, seizure induced fall, or the head and neck injuries the Plaintiff sustained as a result of the fall. (*See* p. 70, lines 14-23, to p. 71, lines 1-14, to Exhibit C to the Mackey Declaration.)

39. Neither the Plaintiff's neurologist expert witness nor the Plaintiff's urologist expert witness performed a differential diagnosis, or any other scientific process, to negate the seizure induced fall the Plaintiff experienced on September 13, 2016, as a potential cause of the Plaintiff's alleged brain injury and resulting neurogenic bladder. (*See* Exhibits D and F to the Mackey Declaration.)

40. Considering that the Plaintiff's expert witnesses did not exclude the September 13, 2016, fall as a potential cause of the Plaintiff's alleged brain injury and neurogenic bladder, the Plaintiff's contention that he suffered those injuries at the hands of the Defendants on September 14, 2016, is speculative. (*See* Exhibit D and F to the Mackey Declaration.)

DATED:   July 27, 2023
         Buffalo, New York

                    LIPSITZ GREEN SCIME CAMBRIA LLP
*Attorneys for Defendants Troy Mitchell, Charles Thomas, Thomas Harte, Thomas Phillips, and Thomas Giancola*

By:   */s/ Patrick J. Mackey*
      Barry N. Covert, Esq.
      Diane Perri Roberts, Esq.
      Patrick J. Mackey, Esq.
      42 Delaware Avenue, Suite 120
      Buffalo, New York 14202
      (716) 849-1333