# EXHIBIT 10

**Robert Knapp MD**
**195 Parrish St**
**Canandaigua NY 14424**

10-7-21

Patrick J. Mackey, Esquire
Lipsitz, Green, Scime & Cambria
42 Delaware Ave.
Buffalo, NY 14202

Re: Matthew Raymond v. Troy Mitchell et al

Dear Mr. Mackey:

At your request I have reviewed the medical records of Matthew Raymond relative to his allegations that on September 14, 2016 he sustained neurologic injuries including a neurogenic bladder. I reviewed his deposition, Bill of Particulars, medical records from WNY Urology, Upstate University, Westfield Memorial Hospital, Auburn Memorial Hospital, Erie County Medical Center, Mercy Hospital, Trinity Medical, Arnot Medical Center, Eastern Niagara Hospital, and medical records from the Department of Corrections. My fee for services rendered in this case is $1800. In the last four years I have provided expert testimony in the following cases: Weaver v. NYS, Harriger v. NYS, Quick v. NYS, Dallas v. NYS and Rekic v. Castellano. I will be paid $500/hr for testimony in this case.

**Record Review**

According to Mr. Raymond's Bill of Particulars he previously had a traumatic brain injury causing occasional seizures and on September 13, 2016 had a seizure and was transported to Auburn Hospital. Upon return to the correctional facility he alleges that he was assaulted and tortured. He alleges that his testicles and penis were assaulted with consequential groin pain and the need for catheterization.

I reviewed his record from Auburn Hospital from 9-13-16. He complained of seizure activity and inability to hold anything orally in addition to abdominal pain. There is a reference to urinary incontinence . He was described as lethargic and had a CT scan of the brain showing no acute pathology.

The Department of Corrections records from 10-3-16 detail the events leading up to the application of force and indicate that the claimant became disruptive requiring restraint. There was no entry relative to groin injury according to these records. There is a description of a seizure which occurred during transport back to the facility from the hospital stating that the claimant's left head made contact with the floor several times during a seizure.

1

His Department of Corrections medical records were reviewed. On 9-14-16 he was described as becoming aggressive and yelling at the ER staff. He was thrashing around in the van and was shown to have swelling around the left eye and left cheek. He had had breakthrough seizures the day before as well. There is an infirmary note from 9-15-16 at which point the claimant stated that he was sexually assaulted. His penis was examined and he claimed to be unable to urinate. He had twitching movements and complaining of "general body pain" on 10-18-17 and complained of right flank pain on 12-29-17. He was described as able to irrigate his suprapubic catheter. He was admitted to Upstate 7-30-17 and had the catheter exchanged. At that time he was taking Keppra for his epilepsy.

He was evaluated at Arnot Medical Center 3-23-18 with a chief complaint of nausea. At the time he was taking oxybutynin, olanzapine, zonisamide and sertraline. He was also evaluated there for a seizure in May 2018 and was treated with Keppra. They referenced his prior psychiatric history including depression and hallucinosis. He had a CT scan of the pelvis referenced from 3-21-18 when he presented with a right quadrant pain. His suprapubic catheter was visualized. The record stated that he had a penile injury in 2016 requiring suprapubic catheter with a neurogenic bladder. He was seen again for breakthrough seizures May 3 and May 28, 2018. He was complaining of pain at his catheter site. There was reference to possible superimposed pseudoseizures. His neurologic examination was unremarkable. There were questions raised as to possible malingering. They stated that his neurogenic bladder was related to a "back injury". He was diagnosed with a urinary tract infection as well. He was admitted 3-20-18 with back pain, flank pain, abdominal pain and penile pain. They reference seizures related to a traumatic brain injury from 2013 and a penile injury from 2016 requiring suprapubic catheterization with neurogenic bladder. He complained of burning stabbing pain in his penis. He was treated with antibiotics for pyelonephritis. He presented 6-7-18 with pain at the suprapubic catheter site with bleeding and abdominal pain. This record stated that his neurogenic bladder was secondary to recurrent trauma. A repeat CT scan of the pelvis was performed. Prior to the alleged incident he experienced abdominal pain and presented to Arnot 12-15-15 and was diagnosed with gastritis. He also had a laparoscopic appendectomy performed prior to the incident done 12-30-15. He was seen at Arnot 12-15-15 for possible seizure.

He had a testicular ultrasound performed 10-18-16 showing a left spermatocele. He reported noncompliance with his anticonvulsant when seen in the clinic 7-31-16. He had an EEG 7-21-16 which was normal and performed at Upstate.

He had been seen at Cayuga Medical Center 7-5-16 and the carried forward diagnosis was non-epileptic seizures. He had been seen there also 6-7-16 and his Keppra was increased to 750 mg twice daily.

He has been followed at Upstate Urology and was seen 6-26-16 with urinary retention managed with a suprapubic catheter. There was discussion about using Botox for his small capacity bladder dysfunction on 3-13-18.

2

There is a CT scan of the brain from WCA Hospital dated 11-23-15 described as normal.

There is a neurologic consultation from 5-3-18, Dr.Hein for seizures. She stated that his seizures were secondary to traumatic brain injury and treated at different times with Keppra, Zonisamide, Trileptal with a notable allergy to Dilantin. She reviewed his history of recurrent nausea and vomiting. She stated that he had residual lower extremity weakness after spinal injury sustained in September 2016 during an assault. She did not demonstrate any abnormalities of sensation stating that his reflexes were 2+. She made various recommendations for management of his epilepsy.

There is an admission record from University Hospital dated 6-28-18. The patient was admitted for abdominal pain. His penis was described as normal with some tenderness of the right testicle. His suprapubic catheter was draining normally by report. He was seen at upstate 6-6-17 with suprapubic pain noting a history of his suprapubic catheter and a history of urethral strictures. He was seen in the ER 1-19-17 with urinary retention. His neurologic examination was normal and there was no testicular tenderness. CT of the abdomen and pelvis were unremarkable. The history received was that he had increasing difficulty urinating since the injury sustained in September 2016. He had been started on Foley drainage days earlier according to a note from 1-24-17. There were no penile abnormalities identified. He was thought to have a urethral stricture according to a note from 3-7-17. This note indicates that he developed urinary retention in January 2017. Ultimately, he had a suprapubic tube placed

He saw Dr. Bowditch 6-10-18 who stated that he had a "spinal cord injury" with trouble moving his bowels, issues with his legs and some lower extremity sensation".

He was seen at Erie County Medical Center January 26, 2019. The history received that he had a prior traumatic brain injury and a "spinal cord injury from motor vehicle accident 15 years ago" with neurogenic bladder with indwelling suprapubic catheter. A CT scan of the brain was performed and was unremarkable for acute pathology. One of his discharge diagnoses was pseudoseizures. He was evaluated at ECMC 2-27-20 and the record stated that he had a history of brain injury and "cervical spinal cord injury". He had a psychiatric evaluation when he was seen there in July 2020 with diagnoses including antisocial personality disorder and polysubstance use disorder. He was seen 10-11-18 and the entry indicates that he had a spinal injury in 2016 leading to a neurogenic bladder. There is an entry from 8-26-18 indicating that his neurogenic bladder from a L4 vertebra fracture dating to 2016

He also has been treated at Kenmore Mercy Hospital at various times for flank and groin pain including 2-28-20. He had a neurology consultation 3-1-20 for breakthrough seizures. His discharge summary stated that he sustained genital trauma requiring a suprapubic catheter placement with recurrent urinary tract infections since then. He was evaluated in the ER 3-9-20 and under past medical history is listed "neck fracture".

He has been treated by urologist, Dr. Butsch. He had a pouch creation in November 2020. Diagnosis of neuromuscular dysfunction of the bladder was noted when he was seen 5-20-21.

There is a record from Wyoming County community Hospital dated 10-22-18 when the claimant presented with seizures. They reference prior "spinal fracture".

He had a CT scan of the cervical spine 9-13-16 after an unwitnessed fall complaining of neck pain. This study was unremarkable. He had a CT of the cervical spine also 4-1-20 from Kenmore Mercy Hospital which was unremarkable.

His psychiatric records indicate the diagnoses of depression, bipolar disorder as well as a prior history of marijuana, cocaine and heroin use. A record from Central New York Psychiatric Center dated 12-10-15 stated that in 2012 he had an accident at work when a support beam hit his head resulting in coma for 3 days and subsequent seizures. He was treated with various antipsychotic and antidepressants.

His transcript was reviewed. At the time he had his suprapubic catheter in place. He was taking methadone, oxybutynin, gabapentin, Wellbutrin, Zyprexa and Prozac at the time. He stated that he had access to marijuana, heroin, cocaine and ecstasy while in prison. He described assaults while an inmate at the hands of other prisoners. He had a motorcycle accident in October 2007 which according to records resulted in an injury to his lumbar spine however he did not recall a spinal injury. Relative to the head injury from 2012 he stated that he was not admitted but developed seizures as a consequence and that there was bleeding on his brain. He was shown records indicating the inability to urinate dating back to January 2016 which the claimant attributed to his postoperative status following an appendectomy. Defense counsel showed him a record from Auburn Community Hospital prior to the alleged assault indicating that he had had urinary incontinence which the claimant attributed to a seizure. He then described the assault including an injury to his genitals. Patient stated he had trouble walking occasionally particularly with his right leg. He stated that he would experience bleeding from his penis soon after the alleged assault. He stated that he was capable of having sexual intercourse and maintaining an erection but did not have penile ejaculation because of a urethral stricture.

He had an MRI of the brain at Kenmore Mercy Hospital 1-28-14 showing bilateral periventricular and subcortical white matter changes consistent with trauma, inflammation, vasculitis or demyelinating disease

He has been managed by urologists. He had an Indiana pouch in 2020 and has been managed medically with oxybutynin. They also reference a cervical spine injury according to a note from 11-30-20. His operative note from 11-17-20 indicates "incomplete cervical spine cord injury from assault with neurogenic bladder and urinary retention". Specifically, they reference "C2 spinal cord injury with traumatic brain injury in 2016".

4

I reviewed a report from Dr. Leitch dated 7-21-21 in which she speculates that the claimant sustained a traumatic brain injury while under the supervision of the Department of Corrections causing his neurogenic bladder.

### Opinion

This extensive medical record does not document any evidence to support that this claimant sustained an injury resulting in a neurogenic bladder. The conclusion that the claimant has a neurogenic bladder requires a proper neurologic diagnosis and a localization in the nervous system on which to base that claim. Dr. Leitch speculates causation to a traumatic brain injury. Even presuming this to be the case, the absence of lower extremity spasticity, Babinski signs, weakness or other signs of neurologic abnormality prove the opposite. Neurogenic bladder caused by traumatic brain injury cannot exist by itself without other neurologic findings. The claimant's MRI of the brain showing bilateral periventricular and subcortical white matter changes is nonspecific and consistent with the known diagnosis of epilepsy, use of certain recreational drugs and brain trauma prior to the alleged incident and cannot be construed as proof of speculative brain trauma.

Presuming a cervical spinal cord injury, required findings include spasticity, weakness, increased reflexes and Babinski signs if the alleged neurogenic bladder was on the basis of injury to that part of the spinal cord. He had a neurology consultation 5-3-18 during which time he claimed weakness in the lower extremities but was demonstrated to have full strength, normal reflexes and sensation with no abnormalities of spinal cord dysfunction noted. This is inconsistent with the allegation that a cervical spinal cord injury was the basis for causing his symptoms. Furthermore, CT imaging of the cervical spine demonstrated no pathology to support this claim. If there had been any clinical suspicion that the claimant's neurogenic bladder was caused by an injury to the spinal axis, MRI imaging would have and should have been done.

Presuming a lumbar injury, bladder dysfunction is associated with high volume residual urine unlike this case where his bladder capacity is diminished. Oxybutynin would not be utilized under the circumstances of a neurogenic bladder caused by lumbar spinal injuries. Furthermore, lumbar spinal injuries causing a neurogenic bladder are associated with loss of sensation in the genital and anal region in addition to severe chronic constipation and erectile dysfunction. There are no entries in this medical record to indicate the clinical finding of loss of sensation as required for this diagnosis.

Neurologic injuries involving the spinal cord are associated with immediate neurologic deficits which typically improve with the passage of time. This claimants time to urinary retention was delayed by approximately 6 months which is also not consistent with the natural history of spinal cord trauma.

The above referenced opinions are represented within a reasonable degree of neurologic certainty.

5

I hereby declare and affirm, pursuant to CPLR 2106, that I am a physician licensed to practice in the state of New York, that the above report was personally prepared by me, and that the statements contained in this report are true and made under penalty of perjury.

Robert Knapp MD

CURRICULUM VITAE

Robert S Knapp M.D.

195 Parrish Street
Canandaigua, NY 14424
585-394-6811

EDUCATION

Vassar College, 1977, Cum Laude , BA Biology
University of Pittsburgh School of Medicine 1982.   Alpha Omega Alpha.M.D.
Internal Medicine Internship Presbyterian University Hospital University   Pittsburgh PA 1982-83
Residency Neurology Strong Memorial Hospital University of Rochester NY1983-86

POSITIONS HELD

Neurology Consultant Canandaigua New York 1986-2020
Medical Director Ontario County ARC 1990-present
Director, Sleep Disorder Center of the Finger Lakes 1991-98
Clinical Instructor, Department of Neurology University of Rochester 1992-present
Director Thompson Health Systems Stroke Center 2006-2010
Reviewer Maximus Federal Services 2014-2018
Neurology Consultant Clinica Esperanza Honduras 2007-present

BOARD CERTIFICATION

American Board of Psychiatry and Neurology 1989

MEMBERSHIPS

American Academy of Neurology 1983-2015
American Medical Association 2016-2019

PUBLICATIONS

Kurlan ,Knapp et al Double Blinded Assessment of Potential Pergolide Induced Cardiotoxicity.   Neurology.   1986.   36:993-95